896 F.Supp. 528 (1995)
2BD ASSOCIATES LIMITED PARTNERSHIP, et al.
v.
COUNTY COMMISSIONERS FOR QUEEN ANNE'S COUNTY, et al.
No. K-94-698.
United States District Court, D. Maryland.
March 30, 1995.
*529 *530 William D. Evans, Jr., of Annapolis, MD, for plaintiffs.
Richard T. Colaresi, and B. Darren Burns, of Annapolis, MD, for defendants.

MEMORANDUM AND ORDER
FRANK A. KAUFMAN, Senior District Judge.
(1) Reference is hereby made to plaintiff's September 9, 1994 motion to compel discovery of the former director of Planning and Zoning for Queen Anne's County, Joseph Stevens, and to extend the discovery deadline, defendants' opposition of September 23, 1994, plaintiffs' reply of October 17, 1994, plaintiff's October 21, 1994 motion to compel discovery of the three County Commissioners for Queen Anne's County, William V. Riggs, III, Archibald A. MacGlashan and Oscar A. Schultz, and to compel discovery of the Queen Anne's County Administrator, Robert Sallit, and to extend the discovery deadline, defendants' opposition of November 7, 1994, plaintiffs' reply of November 18, 1994, this Court's February 6, 1995 Memorandum to Counsel, defendants February 17, 1995 Legal *531 Memorandum, plaintiffs' February 21, 1995 Response to Memorandum to Counsel, plaintiffs' March 15, 1995 Notice of Recent and Relevant Case Authorities, defendants' March 23, 1995 Response to Plaintiffs' Notice, and all filings in relation thereto.
(2) This series of motions arises in the context of a suit by plaintiffs for violations of equal protection, due process, and taking of property, plus pendent state law claims for violations of police power, zoning estoppel and tortious interference with business relations, in connection with a series of events that ultimately had the effect of denying plaintiffs the opportunity to build a truck stop and travel plaza, comprised of a restaurant and gas station, on certain land owned by plaintiffs. On May 4, 1994, defendants filed a motion for abstention, or, in the alternative, to dismiss the complaint for failure to state a claim upon which relief can be granted. This Court, on August 24, 1994, memorialized an agreement reached among Court and counsel during an on-the-record telephone conference held on August 18, 1994, by which the parties were to undertake limited discovery on the issue of whether one or more defendants engaged in inappropriate tortious conduct. Such discovery was undertaken with the purpose of allowing defendants to convert their motion to dismiss into a motion for summary judgment. However, during the course of such discovery, a number of problems have arisen which are the subject of the attendant motions and which require resolution by this Court.
(3) The major controversy posed by these motions relates to the possible application of the doctrine of legislative immunity with regard to the deposing of the above named government officials. During the depositions of each of those individuals, counsel for defendants asserted that doctrine to block off certain areas of inquiry. In their motions to compel, plaintiffs assert that legislative immunity is inapplicable in the said deposition context.
(4) "The doctrine of absolute legislative immunity for members of the United States Congress stems from the Speech or Debate Clause of the Constitution. The Clause is designed to shield legislators from the threat of possible prosecution by an unfriendly executive and conviction by a hostile judiciary. The common-law immunity for state legislators was first recognized in Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019, rehg. denied, 342 U.S. 843, 72 S.Ct. 20, 96 L.Ed. 637 (1951). In Tenney, the Court created absolute immunity from civil suit for state legislators acting within `the sphere of legitimate legislative activity.'" Id. 341 U.S. at 376, 71 S.Ct. at 788. Marylanders For Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 296-97 (D.Md.1992) (footnotes omitted) (hereinafter MFFR). The doctrine also applies to actions by local government officials in their legislative capacities so as to afford them absolute immunity. Roberson v. Mullins, 29 F.3d 132, 134 (4th Cir.1994); Scott v. Greenville County, 716 F.2d 1409, 1422-23 (4th Cir.1983); Front Royal & Warren County Ind. Park Corp. v. Town of Front Royal, 865 F.2d 77, 79 (4th Cir.1989); Bruce v. Riddle, 631 F.2d 272, 279 (4th Cir.1980). Absolute immunity enables legislators to be free, not only from "the consequences of litigation's results, but also from the burden of defending themselves." Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967). See also MFFR, supra at 297; Fralin & Waldron, Inc. v. County of Henrico, 474 F.Supp. 1315, 1320 (E.D.Va. 1979). Thus the effect of the doctrine is twofold; it protects legislators from civil liability, and it also functions as an evidentiary and testimonial privilege. See MFFR, supra at 297; see also Schlitz v. Commonwealth of Virginia, 854 F.2d 43, 46 (4th Cir.1988) ("[t]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves"). It is that second part of the privilege which defendants seek to assert in the context of limiting discovery. This Court has no question but that, in the context of the pending motions, if immunity from civil liability attaches to a given action, then such testimonial immunity applies as well.[1]
*532 (5) It is the function of a given government official with regard to a particular act which determines whether or not that official is entitled to immunity for that act, regardless of that official's title. Forrester v. White, 484 U.S. 219, 223-24, 108 S.Ct. 538, 541-42, 98 L.Ed.2d 555 (1988). The same is true as to legislative immunity. Baker v. Mayor and City Council of Baltimore, 894 F.2d 679, 682 (4th Cir.1990), cert. denied, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990) (the "function performed by the Board [in submitting a proposed budget to the City Council for passage] and not the titles of its members, is determinative of whether a given task is legislative or executive in nature for immunity purposes"); MFFR, supra at 298-99. Thus, an official with title of legislator does not receive absolute immunity for actions that are administrative in nature, and conversely, an official whose title is that of an executive will receive absolute immunity for actions which are legislative in nature.
(6) The question, thus, is whether the acts about which deposition testimony is being sought were undertaken in a "legislative capacity", Roberson, supra at 134, (quoting Front Royal, supra at 79, Bruce, supra at 279). A local governmental body acts in a legislative capacity when it engages in the process of "adopt[ing] prospective, legislative-type rules", Roberson, supra at 135, (quoting Front Royal, supra at 79, Scott, supra at 1423).[2] The acts in controversy here concern Ordinance 93-02, which amended the Queen Anne's County Zoning Ordinance in such a way as effectively to disallow the construction and use of the travel plaza desired by plaintiffs. That Ordinance was drafted by Joseph Stevens, and introduced and passed by the County Commissioners. Courts have appropriately taken great care in differentiating between administrative and legislative acts in the area of zoning. See Crymes v. DeKalb County, 923 F.2d 1482, 1485 (11th Cir.1991) (concluding that Board's decision to uphold denial of development permit for plaintiff's property was administrative, as it was the application of policy to a specific party); Haskell v. Washington Township, 864 F.2d 1266, 1278 (6th Cir.1988) ("[i]f the underlying purpose of zoning activity is to establish general policy, then it is legislative ... [but if it] `single[s] out specifiable individuals and affect[s] them differently from others', it is administrative", and remanding to district court for specific determinations of whether alleged injurious conduct, including enactment of zoning ordinances which effectively prevented plaintiff from opening his proposed abortion clinic, *533 was "administrative, legislative or outside the scope of either. The degree of immunity from the damages, if any, flowing from each activity will depend on the results of that determination by the district court"); Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984) (adopting the analysis in Developments in the LawZoning, 91 Harv.L.Rev. 1427, 1510-11 (1978)[3], and concluding that the actions of town planning board, in imposing certain conditions upon the development of plaintiff's subdivision, were administrative); Stone's Auto Mart, Inc. v. City of St. Paul, 721 F.Supp. 206, 210 (D.Minn.1989) (applying the two tests of Developments in the Law  Zoning, supra, and determining that city council's denial of petition to rezone plaintiff's property was administrative). In this case, particularly in light of the Fourth Circuit's approach to legislative immunity analysis in Roberson, Front Royal and Bruce, this Court can comfortably classify both the drafting of Ordinance 93-02 by Stevens, and the introduction and passage of said ordinance by the County Commissioners, as legislative acts.
(7) On its face, Ordinance 93-02 is inarguably a "prospective, legislative-type" rule. General policy reasons, such as traffic control and protection of residential areas, support the zoning change, and at least theoretically, that change circumscribes the ability to build any travel plaza within the County. Plaintiffs argue, however, that behind that legislative exterior lurks an administrative monster; that is, plaintiffs contend that the general policies cited were a pretext to prevent the construction and use of this particular proposed travel plaza.[4] However, as Judge Smalkin has written in Drayton v. Mayor and City Council of Rockville, 699 F.Supp. 1155, 1157 (D.Md.1988), aff'd, 885 F.2d 864 (1989), "this argument misses the point, which is that it is only the process, not the reason for it, that must be examined. If the former is legislative ... the latter is not to be inquired into by the courts." In Drayton, because the creation and elimination of public jobs was accomplished through a legislative process, allegations of discriminatory motives behind the elimination of plaintiff's job were irrelevant, and legislative immunity was applicable.[5] Likewise here, the process of drafting and adopting a zoning ordinance circumscribing the creation of any travel plaza *534 throughout the County is "prospective, legislative-type rulemaking"; even if the catalyst to action was the proposal of a particular plaza, a prospective rule of general applicability has been generated. See Scott, supra at 1423 (in which Chief Judge Winter wrote that county council members were not entitled to absolute immunity for the withholding of a builder's permit, because absolute immunity does not apply "[w]hen local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement"; Rogin v. Bensalem Township, 616 F.2d 680, 694 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), cited and quoted from by Judge Winter in Scott at 1423, in which local officials' actions were deemed "administrative in nature because they involved application of the Township's general zoning policies  as manifested in the [recently passed] amendments  to a particular parcel of land"); Fralin & Waldron, Inc. v. County of Henrico, 474 F.Supp. 1315, 1320-21 (E.D.Va.1979) ("The members of the Planning Commission were engaged in legislation when recommending the land in issue be rezoned, since such recommendation procedure is an essential part of the adoption of zoning laws ... However, such immunity does not extend to their executive actions in enforcing the zoning change by refusing to approve plaintiff's [plan of development] or in their alleged attempts to hinder construction of plaintiff's housing project by communication with plaintiff's bank"). Likewise, here, absolute immunity applies to bar discovery of Stevens, regarding his drafting of the ordinance, and of the County Commissioners in introducing and enacting that ordinance, as those activities involved "prospective, legislative-type rulemaking". However, discovery regarding the enforcement of this zoning change against plaintiff, or regarding any acts unrelated to the drafting and passage of the ordinance which were allegedly taken to hinder plaintiffs' project, such as delays in processing plaintiffs' application or refusals to grant needed variances, is not so barred.
(8) Plaintiffs also argue that the alleged monetary interest of one of the County Commissioners in blocking their project renders legislative immunity inapplicable, citing Haskell, supra at 1278 for the proposition that "absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests," citing Bruce, 631 F.2d at 276-77 n. 2. In Bruce, supra at 279, Judge Sprouse also wrote as follows:
Bruce's second contention is that the defendants acted outside of their legislative immunity by meeting privately with interested individuals who tended to influence their vote on the zoning ordinances. Viewing the complaint in the light most favorable to Bruce, the complaint alleges that the defendant members of the Council met with a number of their constituents who had selfish interests in the passage of the zoning ordinance and were influenced in their vote as a result of the meetings. The proof of these allegations at trial would not remove the defendants from the scope of their legislative activities. There may well be circumstances involved in private meetings by legislators that would remove them from the umbrella of legislative immunity. Illegal acts such as bribery are obviously not in aid of legislative activity and legislators can claim no immunity for illegal acts. Plaintiff, however, alleges no such illegal conduct.
Nor do plaintiffs assert any such illegal conduct in this case.
(9) Once an activity is deemed to be legislative, at least in the context of the within case, the cloak of immunity will fully protect not only the government officials themselves, but their aides as well[6], "although it is considered `less absolute' as applied to those individuals." MFFR, supra at 298, citing to and quoting from Dombrowski, supra at 85. However, this Court does not believe that the County Administrator, Robert Sallit, acted in the capacity of an aide. *535 Rather than carrying out staff functions that traditionally would have been carried out by a legislator himself, see MFFR, supra at 301, Sallit is a self-described liaison between departments who does not perform legislative duties, or in fact involve himself in the day-to-day workings of any particular department of the local government; rather, he serves in an administrative capacity between departments. Thus, Sallit is not entitled to testimonial immunity on a derivative basis as a staff member. Defendants further argue that he nonetheless may not be subjected to deposition examination regarding the enactment of the ordinance because the individual defendants named in the suit are immune from liability arising for those actions and because the doctrine of legislative immunity insulates a governmental entity and its staff members where individual legislators would be required to testify as to their motives in order to defend that entity. However, in Roberson, supra at 135-36, n. 5, Judge Russell, taking note of Baker v. Mayor and City Council of Baltimore, 894 F.2d 679, 681 (4th Cir.1990) and Hollyday v. Rainey, 964 F.2d 1441, 1443 (4th Cir.1992), wrote: "We need not, and do not, decide here whether a local governmental body, or the municipality for which it is the governing body, is ever entitled to absolute legislative immunity." In that light, and since Sallit is not entitled to derivative immunity, this Court will allow discovery to be sought from him.
(10) A further contention of plaintiffs is that legislative immunity has been waived, due to the fact that one or more of those from whom discovery is sought answered certain questions regarding legislative activities. In United States v. Helstoski, 442 U.S. 477, 490-91, 99 S.Ct. 2432, 2440-41, 61 L.Ed.2d 12 (1979), Chief Justice Burger wrote that any waiver of a legislator's privilege "can be found only after explicit and unequivocal renunciations of the protection." Helstoski involved a federal legislator's privilege; in it, the Court founded the testimonial privilege on the Speech or Debate Clause. Id. In Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 404-06, 99 S.Ct. 1171, 1178-79, 59 L.Ed.2d 401 (1979), Justice Stevens, after quoting from Justice Frankfurter's concurring opinion in Tenney, supra, noted that the policy rationale underlying the Speech or Debate Clause is "equally applicable to federal, state, and regional legislators." The alleged waivers here were not explicit; accordingly, the privilege stands as not waived.
(11) Plaintiffs further seek discovery relating to what occurred in so-called closed governmental sessions. Any discovery sought from the County Commissioners, relative to statements made among the County Commissioners as to the "purpose, formation, county-wide impacts, and impetus for Ordinance 93-02" are necessarily barred due to legislative immunity, and the "closed meeting" factor does not alter that analysis. However, other discovery sought from those meetings, including questions to be asked of Mr. Sallit regarding the ordinance, will be allowed by this Court. The Maryland statutory scheme specifically contemplates that "[i]t is essential to the maintenance of a democratic society that, except in special and appropriate circumstances: (1) public business be performed in an open and public manner; and (2) citizens be allowed to observe: (i) the performance of public officials; and (ii) the deliberations and decisions that the making of public policy involves,"[7] and further specifically details the circumstances in which a closed session is permitted.[8] Since the matters at issue in the within litigation are not of the type which can properly be the subject of a closed meeting, the interests of our citizenry are better served by allowing inquiry into (1) whether or not anything relevant to this litigation, but not barred by the legislative immunity privilege, *536 was discussed at closed governmental sessions and (2) if so, the content of what was said. See United States v. Irvin, 127 F.R.D. 169, 173 (C.D.Cal.1989) (concluding that qualified privilege of local legislators for deliberations at closed meeting should yield to interest of disclosure). But see Illinois Educ. Labor Rel. Bd. v. Homer Community Consol. Dist., 132 Ill.2d 29, 138 Ill.Dec. 213, 216, 547 N.E.2d 182, 185 (1989) (holding that qualified privilege existed for closed-session bargaining strategy meeting).
(12) Defendants also seek to assert the attorney-client privilege to prevent the taking of depositions of any County attorneys, in the event that the discovery deadline is extended, as it shall be pursuant to this Memorandum and Order. Plaintiffs did not originally seek to contest the invoking of the attorney-client privilege, but in its February 21, 1995 Response to this Court's February 6, 1995 Memorandum to Counsel, contend that the attorney-client privilege has been waived under the analysis applied in City of College Park v. Cotter, 309 Md. 573, 525 A.2d 1059 (1987). That analysis indicates that a local public body can waive its attorney-client privilege by prohibiting closed meetings in the municipal charter. However, that analysis is inapplicable here; plaintiffs' contention that § 9930(a) of the Queen Anne's County Zoning Ordinance "evidences that in the context of considering zoning text amendments, all discussions must be in open meetings" is quite a stretch, for that section merely states that "[a]fter receiving the recommendations of the Planning Commission, the County Commissioner shall conduct a public hearing with respect to the proposed amendment." Thus, this Court concludes that the attorney-client privilege has not been waived. Nonetheless, this Court will not bar all depositions of County attorneys, as requested by defendants. Such depositions may be taken; the attorney-client privilege shall be asserted, when and only if applicable, during the course of said depositions.
(13) Plaintiffs have further contended that Commissioner MacGlashan is withholding certain documents, relevant to the ordinance, in his personal files. Defendants refute that contention, and further assert that if such documents did exist, the privilege of legislative immunity applies to them. This Court agrees with that latter contention of defendants.
(14) Plaintiffs have repeatedly contended that, for various reasons, the zoning ordinance violates Maryland law and should be voided. Those contentions are, however, not relevant to the issues raised by the pending motions to compel discovery and will be reached subsequently after discovery has been completed.
(15) This Court hereby extends the discovery deadline until May 1, 1995, with discovery in that period to be conducted both within the parameters indicated supra in this Memorandum and Order and the parameters indicated by this Court in its August 24, 1994 Memorandum to Counsel. After the completion of the extended discovery period, defendant shall have until May 15, 1995, to submit Rule 56 materials supplemented in the light of completed discovery. Plaintiffs shall have until May 29, 1995, to oppose, and defendant shall then have until June 8, 1995, to file rebuttal, if any.
(16) All discovery motions are decided by the within Memorandum and Order. Any and all other motions are hereby denied, subject to reconsideration, without any repetitive briefing, after all discovery has been completed.
(17) Copies of this Memorandum and Order are today being mailed to counsel of record.
(18) It is so ORDERED.
NOTES
[1] In MFFR, supra at 304, Judges Murnaghan and Motz have indicated that a "less categorical, more flexible approach should be taken to the question of testimonial legislative immunity in shaping the scope of discovery", at least in the context of that case, where depositions of private citizens serving on the Governor's Redistricting Committee were allowed to be taken. That case was somewhat unique, however; the decision was informed not only by the fact that the deposed were private citizens whose depositions could be taken "without directly impacting on legislative sovereignty" and the fact that "it [is] extremely unlikely that in the future private citizens would refuse to serve on a prestigious gubernatorial committee because of a concern that they might subsequently be deposed in connection with actions taken by the committee", but was further informed by the "unique nature of legislative redistricting" which, "[w]hile it is an exercise of legislative power, is not a routine exercise of that power. The enactment of statutes ordinarily involves the implementation of public policy by a duly constituted legislative body. Redistricting involves the establishment of the electoral structure by which the legislative body becomes duly constituted". Id. at 304-05. In the instance case, no such factors exist to mitigate towards such a flexible approach; the individuals whose deposition testimony are sought are all government officials, and the passing of a zoning ordinance can hardly be analogized to the unique nature of legislative redistricting.
[2] As pointed out by Judge Russell in Roberson at 135, "[e]very other court of appeals that has attempted to define when a local governmental body acts in a legislative capacity has set forth the same, or a very similar, standard. Brown v. Griesenauer, 970 F.2d 431, 437 (8th Cir.1992); Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir.1992); Hughes v. Tarrant County, 948 F.2d 918, 921 (5th Cir.1991); Crymes v. DeKalb County, 923 F.2d 1482, 1485 (11th Cir. 1991); Ryan v. Burlington County, 889 F.2d 1286, 1290-91 (3d Cir.1989); Haskell v. Washington Township, 864 F.2d 1266, 1278 (6th Cir. 1988); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985); see also Developments in the LawZoning, 91 Harv.L.Rev. 1427, 1510-12 (1978) (discussing the standard that was subsequently adopted by the First and Fifth Circuits)."
[3] See n. 2 supra. That article suggested two tests for distinguishing between legislative and administrative activity. The first test focuses on the nature of the facts used to reach the given decision; if those facts are "generalizations concerning a policy or state of affairs", then the decision is legislative. On the other hand, if those facts are specific, such as those relating to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state of action". If the action establishes general policy, it is legislative; if, on the other hand, it "single[s] out specific individuals and affect[s] them differently from others", the action is administrative. Those tests for differentiating between administrative and legislative acts are set forth in the article in connection with requirements of procedural due process in an administrative as opposed to a legislative setting, and are formulated to be "responsive in all cases to the due process interests in efficiency, representation and dignity". Supra at 1510; see discussion of what those interests entail, supra at 1505-08. The degree to which those due process interests coincide with the interests served by affording legislators immunity, and thus to what degree those tests should govern in the context of immunity analysis, seemingly requires careful thought, although it is to be noted that those tests have played a large role in shaping the law of legislative immunity; the tests have been specifically adopted by the 1st Circuit in Cutting, supra, as well as by the 5th Circuit in Hughes v. Tarrant County, 948 F.2d 918, 921 (5th Cir.1991), and have influenced the tests adopted by other circuits (see e.g., Haskell at 1278, quoting from Cutting).
[4] In fact, plaintiffs' project was the only travel plaza proposal pending in the County at the time of the amendment. Also, the information supplied by the developer was utilized in drafting the amendment. In addition, plaintiffs' plaza proposal was the only one actually affected by the passage of the amendment.
[5] The fact that legislative immunity bars inquiry into legislative motive may not, in and of itself, entirely bar inquiry into motive as part of the threshold determination of whether the process, i.e., the function, is legislative or administrative. Also, legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests may be excepted from the protection of legislative immunity, Haskell, supra at 1278; Bruce, supra at 276-77 n. 2, although as pointed out by Judge Sprouse, Bruce, supra at 276, cases so seeming to indicate may not have involved absolute, as opposed to exceptions for qualified, immunity.
[6] As discussed supra in footnote 1, the particular concerns in MFFR, which led Judges Murnaghan and Motz to allow the deposition testimony of private citizens who aided the Governor in the legislative process of preparing the redistricting plan, are not present here.
[7] Md.State Gov.Code § 10-501(a).
[8] § 10-508(a) allows closed sessions in fourteen circumstances: (1) personnel matters; (2) protection of individual privacy in non-public matters; (3) acquisition of real estate; (4) economic development matters; (5) investment of public funds; (6) marketing of public securities; (7) consulting with legal counsel; (8) litigation consultations; (9) collective bargaining; (10) public security; (11) qualifying examination issues; (12) criminal investigations; (13) compliance with legal requirements on disclosure of proceedings; and (14) government contracts matters.