BARRY, Circuit Judge:
Appellants suggest that we recognize a for m of legislative immunity heretofore unknown in the law, one which can best be described as “partial legislative immunity.” Thus, and it is not disputed, the immunity appellants assert would enable them to seek discovery, but not respond to it; take depositions, but not be deposed; and testify at trial, but not be cross examined. Moreover, appellants presumably believe that when they come upon an aspect of the litigation they find disagreeable, as they find the discovery order at issue here to be, they will be able to pursue an interlocutory appeal in this Court. We disagree, and will dismiss this interlocutory appeal for lack of jurisdiction.
I.
In March 1998, suit was filed by students and parents, organizations, school district and city officials of the City of Philadelphia, and the City itself (hereinafter “appellees”) alleging that the formula used by the Commonwealth of Pennsylvania to allocate certain federal education monies violated the regulations adopted by the U.S. Department of Education implementing Title VI of the Civil Rights Act, 42 U.S.C. §§ 2000d-2000d-7. See 34 C.F.R. § 100.3(b). More specifically, the complaint alleged that the Commonwealth’s criteria and methods of funding public education yield racially discriminatory results in Philadelphia and other predominantly minority school districts. In-junctive and declaratory relief was sought against members of the state’s executive branch, including the Governor, the Secretary of Education, the State Treasurer, and the Chair of the State Board of Education.
In early May 1998, several leaders of the Pennsylvania General Assembly (the “Legislative Leaders”) moved to intervene in the suit, citing their financial and legal interests in the litigation and the need to “articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government.” App. at 48a.[1] *523 That motion was unopposed, and was granted by the District Court. In their brief in support of intervention, the Legislative Leaders explicitly concurred in the motion to dismiss filed by the executive department defendants two days earlier; shortly thereafter, the legislators filed their own motion to dismiss or for judgment on the pleadings; and shortly after that, they filed yet another motion for judgment on the pleadings. The District Court dismissed the complaint for failure to state a claim. We reversed, emphasizing that the validity of appellees’ claims could be tested only on a developed record and rejecting the Legislative Leaders’ argument that plaintiffs lacked standing to maintain each count of their complaint. Powell v. Ridge, 189 F.3d 387 (3d Cir.1999). Notably, we did not mention legislative immunity, be it partial or absolute, because it was, at least at that time, a non-issue. The Legislative Leaders and the executive branch defendants filed separate petitions for certiorari to the Supreme Court of the United States. Both petitions were denied. Ryan v. Powell, 528 U.S. 1046, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999); Ridge v. Powell, 528 U.S. 1046, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999).
The District Court, taking the cue from us, thereafter entered a scheduling order and appellees accordingly sought discovery from all defendants, both executive and legislative. The Legislative Leaders objected, asserting, for the first time, “legislative privilege.” After a meeting between counsel for both sides, however, the Legislative Leaders agreed to search their files to deter mine what documents they possessed which would fall under the discovery requests. Ultimately they reported finding two boxes of documents, only 56 pages of which they deemed to be not privileged. Appellees then filed a Motion to Compel, which was granted, although because of a miscommu-nication between counsel, the Legislative Leaders’ response to the motion was not received until after the District Court entered its order. That response, which included a multitude of objections to the discovery requests including “legislative privilege,” was, however, considered by the Court in connection with the Legislative Leaders’ motion for reconsideration. The Court gave the objections short shrift, finding that our prior decision stressed the “importance of Plaintiffs’ ability to conduct discovery” and, in light of this “mandate,” denied the motion for reconsideration. The Legislative Leaders have now appealed the order granting the Motion to Compel.[2]
II.
“As a general rule, discovery orders are not final orders of the district court for purposes of obtaining appellate jurisdiction under 28 U.S.C. § 1291.” In re Ford Motor Co., 110 F.3d 954, 958 (3d *524 Cir.1997) (citing Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 461 (3d Cir.1996)). The collateral order doctrine excepts from this prohibition a narrow range of interlocutory decisions. In re Montgomery County, 215 F.3d 367, 373 (3d Cir.2000) (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). To come within the doctrine, an interlocutory decision must conclusively determine the disputed issue, the issue must be completely separate from the merits of the action, and the decision must be effectively unreviewable on appeal from a final judgment. Id. (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).
Just recently, in Bacher v. Allstate Ins. Co., 211 F.3d 52 (3d Cir.2000), we discussed the applicability of the collateral order doctrine to discovery orders. In Bacher, the defendant insurance carrier contended that “sensitive” information regarding previous settlements ought to be privileged from discovery. Id. at 55. We found that in light of Cunningham v. Hamilton County, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999), Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), and the approach taken by other courts of appeals — which, we noted, prohibit immediate review of discovery orders even when privilege issues are involved — the collateral order doctrine does not reach appeals of discovery orders “beyond the narrow categories of trade secrets and traditionally recognized privileges, such as attorney-client and work product.” Bacher, 211 F.3d at 57 (emphasis added).[3] Underlying these narrow exceptions to the general rule of non appeal-ability is a concern that where confidential information is sought, there is no way, absent immediate appeal of the order requiring disclosure, to “unscramble the egg scrambled by the disclosure.” Ford, 110 F.3d at 963. It bears mention that even if legislative immunity in its traditionally recognized form were similarly bottomed on confidentiality, which it is not, the Legislative Leaders explicitly disavow any such interest.
It is beyond argument that absolute legislative immunity represents a traditionally recognized privilege, and orders denying legislative immunity have often been reviewed under the collateral order doctrine. Absolute immunity, after all, creates not only protection from liability, but also a right not to stand trial. Montgomery County, 215 F.3d at 373 (citing Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). “Thus, interlocutory review of the Appellants’ absolute immunity claims is necessary to preserve the protections such immunity affords.” Id. In light of such clear case law, the jurisdictional hurdle discussed in Bacher would not stand in the way of a legislator asserting facts giving rise to a colorable claim of legislative immunity.
This is not such a case. Although Bacher found that the collateral order doctrine “should apply to broad categories of interlocutory orders, without concern for the individual circumstances of particular cases,” Bacher, 211 F.3d at 56 (citing Digital Equipment, 511 U.S. at 868, 114 S.Ct. *525 1992), the Legislative Leaders stray far beyond the bounds of traditional legislative immunity, territory they surely recognize. Legislative immunity, they explain, is a doctrine which “protects state legislators absolutely from liability for their legislative activities. It also provides legislators with protection from the burden of defending themselves when engaged in the sphere of legitimate legislative activity.” Appellants’ Br. at 14-15 (citations and internal quotations omitted). Furthermore, they add, legislative immunity “protects against disruption to the legislative process, which civil discovery invariably precipitates.” Id. at 44, n. 14. All of this, of course, is correct.
Despite their understanding of legislative immunity’s broad parameters, however, the Legislative Leaders are not seeking immunity from this suit which, it must be remembered, they voluntarily joined. Nor are the Legislative Leaders seeking any kind of wholesale protection from the burden of defending themselves. Instead, the Legislative Leaders build from scratch a privilege which would allow them to continue to actively participate in this litigation by submitting briefs, motions, and discovery requests of their own, yet allow them to refuse to comply with and, most likely, appeal from every adverse order. As we noted at the outset, and as the Legislative Leaders conceded at oral argument, the privilege they propose would enable them to seek discovery, but not respond to it; take depositions, but not be deposed; and testify at trial, but not be cross-examined. In short, they assert a privilege that does not exist.
Not surprisingly, the Legislative Leaders have failed to come up with even one case which hints at the existence of the privilege they press. Moreover, every case which they do cite to support this privilege features, in direct contrast to this case, a defendant or a target of a subpoena seeking to extricate himself or herself completely from various legal entanglements. See, e.g., Burtnick v. McLean, 76 F.3d 611 (4th Cir.1996); Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408 (D.C.Cir.1995); MINPECO, S.A. v. Conticommodity Services, Inc., 844 F.2d 856 (D.C.Cir.1988); Miller v. Transamerican Press, Inc., 709 F.2d 524 (9th Cir.1983); 2BD Assoc. Limited v. County Commissioners for Queen Anne’s Co., 896 F.Supp. 528 (D.Md.1995); Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292 (D.Md.1992); Campaign for Fiscal Equity v. New York, 179 Misc.2d 907, 687 N.Y.S.2d 227 (N.Y.Sup.Ct.1999).
Unlike the reluctant participants in the cases upon which they rely, the Legislative Leaders voluntarily installed themselves as defendants. And, unlike the reluctant participants in those cases, the Leaders wish to remain as defendants and participate as long as this case is around; at no time, we note, have they invoked legislative immunity as a basis for any of their various motions to dismiss. This is simply not a case of legislators caught up in litigation in which they do not wish to be involved. Rather, these are self-made defendants who seek to turn what has heretofore been the shield of legislative immunity into a sword.
A proper invocation of legislative immunity would typically call for the dismissal of a legislator from the lawsuit. Cases cited by the parties abound with examples of this complete remedy rather than the piecemeal remedies sought here. See, e.g., Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 733-34, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (stating that if legislative immunity applied, “defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity”) *526 (emphasis added); Eastland v. United States Servicemen’s Fund, 421 U.S. 491, 511 n. 17, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (while immunity does not absolve legislators of the responsibility of filing a motion to dismiss, such motions must be swiftly resolved); Powell v. McCormack, 395 U.S. 486, 505-06, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (citing prior cases in which the Court dismissed actions against members of Congress under the protection of the Speech and Debate Clause); Mitchell, 472 U.S. at 525, 105 S.Ct. 2806 (“the essence of absolute immunity is its possessor’s entitlement not to have to answer for his conduct in a civil damages action.”); Larsen v. Senate of the Commonwealth, 152 F.3d 240, 254 (3d Cir.1998) (legislators’ motion to dismiss granted for acts taken in legislative capacity).
Not only is dismissal of the legislator the logical and eminently appropriate result where legislative immunity applies, it also is the remedy which best furthers the underlying goals of the doctrine. As we have observed, “[(legislative immunity must be applied pragmatically, and not by labels. Thus, without attempting to draw a line for all cases, we examine whether [the] request for prospective relief 8 [can] be accorded consistent with the policies underlying legislative immunity.” Larsen, 152 F.3d at 253. We, too, need not attempt to set out the precise parameters of legislative immunity for cases yet to come. We find it manifestly clear, however, that absolute legislative immunity was at the heart of cases such as Larsen. The privilege described by the Legislative Leaders would not protect them absolutely from the burdens of this litigation and, therefore, is outside the bounds of traditional legislative immunity. “Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good.” Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). See also United States v. Brewster, 408 U.S. 501, 517, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) (shield of legislative immunity “does not extend beyond what is necessary to preserve the integrity of the legislative process”); United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (cautioning that privileges “are not lightly created nor expansively construed”).
The opinion concurring in the judgment only because, in its view, Larsen establishes our jurisdiction, would open the doors of our Court, albeit briefly, where the “privilege” invoked has, in the words of the distinguished author of that opinion, “no basis in law” and has “never been recognized by this, or any other, court....” Cone. Op. at 527. Those doors must open, in her view, because we cannot in the course of our jurisdictional analysis even peek to see whether we are presented with a traditionally recognized privilege as that would involve touching on the merits. But if this view were to prevail, Bach-er would be rendered meaningless; indeed, a confined examination of at least certain underlying facts was necessary in Bacher and would inevitably be necessary in applying Bacher. In any event, it appears that, under the concurring opinion itself, a peek at the merits would be in order, for it concludes that our collateral order jurisdiction is triggered by calling the privilege “ ‘legislative’ ... in a case involving legislators acting in a legislative capacity,” Cone. Op. at 528, a paradigm merits determination.
Because the purported privilege the Legislative Leaders invoke is assuredly not only not “traditionally recognized,” but is not even suggested by any reasonable reading of the applicable case law, Bacher requires that we dismiss this interlocutory *527 appeal for lack of jurisdiction.[4] We note that, as in any civil case, the Legislative Leaders remain protected by the District Court’s power to limit discovery which is unreasonably cumulative, more easily obtainable from another source, or unduly burdensome. Fed. R. Civ. Proc. 26(b)(2).

. Then then-proposed intervenors referred to immunity only in passing when they stated, in a footnote in their brief, that they do not *523 waive any “speech or debate immunity” they may have. App. at 37a.

. Appellees contend that the Legislative Leaders should have appealed the denial of their Motion for Reconsideration rather than the order granting the Motion to Compel. Without pausing to decide that issue, we note that “decisions on the merits are not to be avoided on grounds of technical violations of procedural rules," Polonski v. Trump Taj Mahal Associates, 137 F.3d 139, 144 (3d Cir.1998), cert. denied, 525 U.S. 823, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998). This Court will exercise appellate jurisdiction over orders not specified in the notice of appeal where “(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.” Id. (citations and internal quotations omitted). Each of those conditions is met here.

. We even more recently examined an interlocutory appeal of a discovery order in Pearson v. Miller, 211 F.3d 57 (2000). Writing only a few days after the Bacher decision, we found jurisdiction under the collateral order doctrine. Id. at 64-65. Pearson is clearly distinguishable from what is at issue here. The information sought in Pearson was confidential and the privilege asserted was based upon specific confidentiality provisions of three state statutes. Id. at 62-63. The Legislative Leaders, by contrast, do not assert a privilege under state law nor any interest in confidentiality.

. The corollary to our finding of no jurisdiction under Bacher is that the Legislative Leaders have not, at least as of yet, invoked absolute legislative immunity. Neither the District Court nor this Court, therefore, has been presented with the question — and, given our lack of jurisdiction, we do not decide— whether such immunity would be available to voluntaiy intervenors such as the Legislative Leaders, or whether the very act of intervening has waived the privilege.