Filed 04/13/26

VERMONT SUPERIOR COURT

Environmental Division

32 Cherry St, 2nd Floor, Suite 303,

Burlington, VT 05401

802-951-1740

www.vermontjudiciary.org

Docket No. 25-ENV-00044



| Peacefield, LLC & Shade Maple, LLC CU & Site Plan Approval |
| --- |

## ENTRY REGARDING MOTIONS

Title:   Amended Motion for Protective Order (Motion #4)

Filer:   David W. Rugh, Esq., attorney for Town of Woodstock

Filed Date: December 22, 2025

    Opposition to Amended Motion for Protective Order, filed by Christoper H. Boyle, Esq., and David L. Grayck, Esq., attorneys for Tom Meyerhoff and Cynthia Volk, on January 16, 2026.

    Town's Reply to Memo in Opposition, filed February 5, 2026, by David Rugh.

    Appellants' Response to Town's Reply, filed March 25, 2026, by Christopher Boyle and David Grayck.

**The motion is DENIED in part and GRANTED in part.**

This matter involves an appeal from the Town of Woodstock (Town) Development Review Board (DRB)'s approval of a site plan and conditional use application for property owned by Peacefield LLC and Shade Maple LLC, located on Pomfret Road, Woodstock, Vermont (the Project). Relevant to the pending motion, Mr. Meyerhoff and Ms. Volk (together, Appellants or Neighbors) allege the Town improperly amended Section 536 of the Town's Zoning Regulations to allow the Project to move forward, and in doing so, improperly spot zoned the area.

Presently before the Court is the Town's motion for a protective order. The Town objects to the subject matter of the noticed depositions and many of Appellants' Interrogatories, Requests for Production, and Requests for Admission on multiple grounds. It asserts many of Appellants' discovery requests seek irrelevant information, and to the extent they seek relevant information, that the information is protected by either the deliberative process or attorney-client privileges. Appellants oppose the motion, contending that the material they seek in discovery is essential to proving their claim that the Town of Woodstock amended the Town's zoning regulations specifically for the benefit of a single individual.

1

**Discussion**

The Town makes two principal arguments in support of its motion for a protective order. First, it asserts that the objected-to discovery requests seek information that is irrelevant, and therefore, not discoverable. Second, it asserts that materials sought fall under the so-called "deliberative process privilege" and are not discoverable for that reason. In essence, the deliberative process privilege is "a privilege designed to protect from public disclosure the opinions, recommendations, and deliberations of government officials, where disclosure might impair, in one or another fashion, the effective functioning of the executive branch." Lanpher v. Town of Morristown, No. 20-2-16 Lecv, slip. op. at 1, (Vt. Super. Ct. Civ. Div. Aug. 31, 2017) (Carlson, J.) (quotation omitted). Because the relevancy objection presents a threshold consideration in this discovery dispute, the Court addresses it first.

**A. Relevancy**

Pursuant to V.R.C.P. 26,

> Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

V.R.C.P. 26(b)(1).

Vermont's standard for discoverable evidence was amended in 2017. That amendment to V.R.C.P. 26(b)(1) restricted the scope of discoverable evidence to items that are "relevant to any party's claim or defense, as opposed to being reasonably calculated to lead to the discovery of admissible evidence." Reporter's Notes, V.R.C.P. 26. The purpose of this amendment is to discourage the practice of requesting large amounts of irrelevant records in discovery based on the hope that they will contain some iota of relevant evidence. Such an interpretation has been affirmed on multiple occasions by state Superior Courts. See, e.g., Wood v. Wallin, No. 21-CV-1702, slip op. at 4, (Vt. Super. Ct. Civ. Div. May 30, 2025) (Tomasi, J.) ("Requesting everything that may exist because that will include the small set of everything that is relevant wholly undermines the letter and spirit of . . . the 2017 amendment to [V.R.C.P.] 26(b)(1) . . . ."); State of Vermont v. Codling Bros. Logging, No. 24-CV-00392, slip op. at *4, (Vt. Super. Ct. Civ. Div. July 28, 2025) (Tomasi, J.).

2

This amendment, however, does not allow a party to refuse discovery on relevancy grounds without providing an understanding of the basis for that objection or without the potential for court intervention. Thus, a party may not refuse to produce documents or respond to discovery based on carte blanche assertions of "irrelevance" with no further justification or evidence. Further, an assertion that a piece of evidence does not conclusively resolve or support an opponent's claim does not per se establish that the material sought is irrelevant. Put another way, "relevant" evidence in this context does not need to be "winning" evidence, nor does it even need to be admissible evidence, to be discoverable under V.R.C.P. 26(b)(1). See V.R.C.P. 26(b)(1).

In this matter, Neighbors seek evidence related to the Town's intent at the time it enacted the March 2025 amendment removing the square foot limitation for on-farm restaurants. They seek this evidence in support of their constitutional spot zoning claim. Neighbors allege that these communications will show Town officials amended the regulations to "provide a specific advantage to a particular landowner . . ." and in doing so, unlawfully spot zoned the area. In re Hartland Grp. N. Ave. Permit, 2008 VT 92, ¶ 16

The Town objects to Neighbors' request on relevance grounds because it asserts that "the motivations of each member of the Selectboard in adopting the Zoning Amendment is irrelevant to this Court's spot-zoning analysis, even if it was to promote Applicant's on-farm restaurant." Town's Reply at 3. In the Town's view, because Granger stands for the proposition that a zoning re-classification may lawfully be done for the benefit of a particular individual as long as there is also a "rationally-related benefit to the community," the Selectboard's intent in passing the amendment simply does not factor into the Court's spot zoning analysis. Granger v. Town of Woodford, 167 Vt. 610, 611(1998).

The Court disagrees with the Town's approach to relevant evidence in this matter. Even if a court ultimately finds that a potential spot zoning claim cannot stand due to the presence of a community benefit, it still must perform the analytical steps leading up to that conclusion. This analysis benefits from any information that sheds light on the motivations of the local governing body in enacting a zoning reclassification, because that ties into whether it was done for the benefit of the community or a single landowner. Spot zoning presents a four-factor test. While a claim may fail one prong and/or ultimately be unsuccessful or discovery sought may relate to a prong that is difficult to prove, again, that does not necessarily result in the discovery being irrelevant. Thus, we conclude that the Town's intent in enacting the amendment is relevant to the spot zoning claim.

The Town's motion for a protective order on the grounds of relevance is **DENIED**

**B. Deliberative Privilege**

Next, the Town asserts that, to the extent Appellants seek relevant information, at least part of the requested information is protected under the deliberative privilege. Appellants oppose this assertion. To the extent that Appellants acknowledge that the privilege exists and is available in this case, they assert that it is qualified and can be overcome by their showing of need.

The existence of a common law deliberative process and/or legislative privilege has never been formally established in Vermont by the Vermont Supreme Court. This is an issue of first impression for this Court, although the question has been addressed by other state trial courts.[1] See, e.g. Lanpher v. Town of Morristown, No. 20-2-16 Lecv, slip. op. at 1, (Vt. Super. Ct. Civ. Div. Aug. 31, 2017) (Carlson, J.). A review of Vermont case law, and relevant statutes, demonstrates that the privilege exists in Vermont.

To begin, the Vermont Public Records Act suggests the existence of such a privilege by explicitly distinguishing the common law privilege from the protections created by those statutes. See 1 V.S.A. § 317(c)(4) (stating records that would cause the custodian to violate a common law privilege are exempt from the Public Records Act, except for "the common law deliberative process privilege as it applies to the General Assembly and the Executive Branch agencies of the State of Vermont."). This strongly indicates that the common law privilege exists in Vermont.

Moreover, the Vermont Supreme Court has noted the frequent and imprecise use of the phrase "executive privilege" to describe various common law privileges (including "deliberative process privilege"), to the extent that some areas of overlap have arisen between them. Killington, Ltd. v. Lash, 153 Vt. 628, 648, n. 3 (1990), overruled on other grounds by 2023 VT 43. This imprecise terminology also extends to federal case law interpreting various common law privileges. Lanpher, No. 20-2-16 Lecv, slip. op. at 1 (recognizing federal courts have used the terms "executive privilege," "deliberative process privilege," "official information privilege," and "intragovernmental opinion privilege," to "refer to effectively the same thing: a privilege designed to protect from public disclosure the opinions, recommendations, and deliberations of government officials, where disclosure might impair, in one or another fashion, the effective functioning of the executive branch.") (quotation

---

[1] This Court noted the uncertainty around the existence of the common law deliberative privilege in Vermont in O'Brien Farm Road, LLC Appeal, No. 22-ENV-00061, (Vt. Super. Ct. Env. Div. Oct. 25, 2023) (Walsh, J.), but declined to address the issue in full at that time.

omitted). For this reason, and for the sake of brevity, the Court will use "deliberative privilege" to refer to the combined "deliberative process privilege/legislative privilege."

The Court briefly describes the privilege here, to be more fully addressed below. The privilege is qualified, rather than absolute. Lanpher, No. 20-2-16 Lecv, slip op. at 2 (citation omitted). For the privilege to apply, the documents or information sought must be "predecisional" and "deliberative." Id. The privilege can be overcome by a showing of need, which is determined on a case-by-case basis and revolves around factors such as relevance and the availability of evidence from other sources. Id.

Vermont case law describing the contours of the privilege or related privileges is sparse. Comparing what does exist, however, with out-of-state cases addressing the topic makes clear that the privilege as it is defined in Vermont shares many of the features that appear repeatedly across jurisdictions. The first of these is the underlying reason for the existence of the privilege. The primary purpose of the privilege is to protect the government's decision-making process by allowing the frank and open exchange of ideas and opinions. City of Colorado Springs v. White, 967 P.2d 1042, 1047 (Colo. 1998); see Ruger v. Nat. Res. Bd., 2012 VT 33, ¶ 14, 191 Vt. 429. Various courts have recognized that the privilege concerning protection from discovery of certain deliberative documents stems from the broader doctrine of legislative immunity, which the United States Supreme Court has explicitly extended to local legislators. Angelicare, LLC v. St. Bernard Par., No. CV 17-7360, at *7 (E.D. La. Mar. 6, 2018); 2BD Assocs. Ltd. P'ship v. Cnty. Comm'rs for Queen Anne's Cnty., 896 F. Supp. 528, 531 (D. Md. 1995); Bogan v. Scott-Harris, 523 U.S. 44, 52, 118 S. Ct. 966, 971 (1998). The privilege applies to "any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." Angelicare, LLC, No. CV 17-7360, at *7 (E.D. La. Mar. 6, 2018). Relevant to this matter, the privilege shields communications of those "'outside the legislative branch . . . when they perform legislative functions' or engage in 'integral steps in the legislative process.'" Benisek v. Lamone, 241 F. Supp. 3d 566, 573 (D. Md. 2017) (quoting Bogan, 523 U.S. at 55).

These precedents indicate that the privilege is designed to protect documents and communications leading up to the taking of official legislative action. Because the legislative body as a whole, and not individual members, has the ability to act in an official legislative capacity (i.e., adopting a new law), it is the legislative body that holds the privilege, rather than its individual members. As a result, simply communicating with a member of the body, by itself, does not guarantee the protection of the deliberative privilege to that communication or document. More information is required to determine if the privilege would apply in that context.

5

Further, as the U.S. Supreme Court's analysis of the issue makes clear, the determination of whether documents are shielded by the privilege depends on whether an act is part of a legislative function, or an integral step in the legislative process. Bogan, 523 U.S. at 55. In making that determination, it is not an official's title that determines whether the information receives protection, but their function in the context of a particular act that dictates whether it is "legislative." 2BD Assocs. Ltd. P'ship, 896 F. Supp. 532; Angelicare, LLC, No. CV 17-7360, at *7 (E.D. La. Mar. 6, 2018). Further, determining "[w]hether an act is legislative turns on the nature of act, rather than on the motive or intent of the official performing it." Angelicare, LLC, No. CV 17-7360, at *7 (E.D. La. Mar. 6, 2018). Courts have repeatedly affirmed the distinction between legislative activity, which "establish[es] general policy," and administrative activity, which "singles out specific individuals and affects them differently from others . . . ." 2BD Assocs. Ltd. P'ship 896 F. Supp. at 532 (D. Md. 1995).

The privilege only covers documents or communications which are "both predecisional (i.e., generated before the adoption of an agency policy or decision) and deliberative (i.e., reflective of the give-and-take of the consultative process)." Colorado Springs, 967 P.2d at 1051 (citing In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997); Lanpher, No. 20-2-16 Lecv, slip op. at 2 (citation omitted). "The government has the initial burden of showing that the requested information genuinely is part of a predecisional and deliberative process." Prof'l. Nurses Serv. Inc. v. Smith, No. 732-12-04 Wncv, slip. op. at 5 (Vt. Super. Ct. Civ. Div. July 14, 2005) (Katz, J.). Again, the privilege is qualified, not absolute, and the burden of overcoming the privilege through a case-by-case showing of need lies with the party seeking discovery. Colorado Springs, 967 P.2d at 1051.

Factors contributing to a showing of need include: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the seriousness of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of engendering future timidity in government employees through the recognition that private communications could be disclosed. Rodriguez v. Pataki, 293 F.Supp.2d 302, 304 (S.D.N.Y. 2003); Church v. Montgomery Cnty., Maryland, 335 F. Supp. 3d 758, 767 (D. Md. 2018).

In the context of the present matter, "[a] local governmental body acts in a legislative capacity when it engages in the process of adopting prospective, legislative-type rules." 2BD Assocs. Ltd. P'ship 896 F. Supp. at 532 (D. Md. 1995) (citation, quotation, and punctuation omitted). Drafting and adopting a zoning ordinance constitutes legislative-type activity "even if the catalyst to action was [a particular individual or entity's proposal]" because "a prospective rule of general applicability has been generated." Id. at 533–34. Moreover, "the motivation of local legislators in rezoning . . . is precisely

the kind of activity which is protected by legislative immunity." <u>Searingtown Corp. v. Inc. Vill. of N. Hills</u>, 575 F. Supp. 1295, 1299 (E.D.N.Y. 1981).

Pursuant to the above, it is clear that the deliberative privilege for municipal officials covers some subset of the documents and/or communications at issue in this case. Neighbors seek communications between members of the Town's Selectboard, Planning Commission, and other municipal officials/employees relating to the Town's enactment of the March 2025 amendment to the Town's zoning regulations removing a 2800 square foot limitation for on-farm restaurants. Neighbors allege that these communications will show Town officials amended the regulations to "provide a specific advantage to a particular landowner . . . ." and in doing so, unlawfully spot zoned the area. <u>In re Hartland Grp. N. Ave. Permit</u>, 2008 VT 92, ¶ 16.

As previously noted, application of the deliberative privilege occurs on a case-by-case basis, and there can be situations where an individual's communications would be covered by the privilege in one instance, but not another. <u>Bogan</u>, 523 U.S. at 55; <u>Colorado Springs</u>, 967 P.2d at 1051 (citing <u>In re Sealed Case</u>, 121 F.3d 729, 737 (D.C. Cir. 1997)). Because the legislative or quasi-judicial body holds the privilege, the body as whole must be engaged in a legislative function to obtain the protection of the privilege. Further, because the Town in this instance bears the burden of showing the requested information is genuinely predecisional and deliberative, the Town's counsel is responsible for establishing that the relevant body was engaged in a legislative/deliberative function at the time the information it seeks to protect was generated.[2]

While the Court has set this matter for an additional motion hearing on April 27, 2026 to review the specific documents the Town has included in its privilege log, it is helpful to provide a weather report about what types of documents or communications will likely be protected by the privilege as the Court has defined it herein.[3]

First, deliberations of a Selectboard related to a potential zoning amendment would likely be protected by the privilege. The analysis changes slightly in the context of the Planning Commission, which assists the Selectboard in preparing potential legislation, but cannot enact ordinances independently. The Planning Commission's work with the Selectboard on legislative activities

---

[2] The Court acknowledges much of this work will be done by the Town continuing to supplement and improve the details of the privilege log. This was discussed with the parties at the March 30, 2026 motion hearing on the pending motion.

[3] As previously noted, the Court will hold a hearing on April 27, 2026 to review the parties' unresolved claims of deliberative privilege as they relate to Neighbors' interrogatories and requests to produce and the Town's privilege log. Because we anticipate the parties will make arguments related to the showing of need required to overcome deliberative privilege at that hearing, we decline to apply that law to specific facts prior to hearing the parties' arguments.

7

represents exactly the type of situation that requires specific factual analysis of whether the privilege applies in each instance that it is asserted. For example, if the entire Planning Commission is discussing zoning bylaws and potential amendments at the direction of the Selectboard, the privilege would apply. For the privilege to extend to communications between two Planning Commission members when the Commission is not deliberating, however, their communication must be at the direction of the Planning Commission or Selectboard as a whole. In terms of the communications from an individual Planning Commission member to members of the Selectboard, that Planning Commission member must have been engaged by the Selectboard (or one member at the request of the whole Selectboard) to assist the Selectboard on some aspect of the legislative process. It is likely that those communications or documents would be privileged. This is distinct from one member of the Selectboard independently seeking out the opinion of a Planning Commission member to answer an individual question or improve their personal understanding of some issue. It is unlikely for these communications or documents to be privileged. The Selectboard as a whole, even if acting through one member, must be asking for the advice of the Planning Commission member(s) regarding a proposed ordinance or amendment in a way that is integral to the legislative process.

If communications exist between a member of the Planning Commission or Selectboard and municipal employees outside the Planning Commission or Selectboard deliberative sessions, where those communications occurred at the direction of the Planning Commission or Selectboard as a whole in the context of its legislative process, it is likely that the privilege applies. In this Court's view, where the Chair of the Planning Commission or Selectboard (or another member other than the Chair) is communicating with town employees, the Town has the burden to establish that this member is acting at the request of the whole Planning Commission or Selectboard.

This analysis also holds for individuals outside the legislative body. Although both the Zoning Administrator and Town Manager are municipal officials employed by the Town, their conversations would not be protected by deliberative privilege because neither is part of a legislative or quasi-judicial body. Communications from and between such Town employees would only fall within the ambit of the privilege if a member of the Selectboard (or Planning Commission), acting at the direction of the entire board or commission, were involved in the communications

This framework is intended to guide the Town's effort in re-examining and enhancing its privilege log. An additional hearing on the Town's motion for protective order is set for April 27, 2026. In preparation for the April 27 hearing, the Town should participate in-person and be prepared to offer in-camera any document or communication withheld under a privilege.

8

The Town's motion for protective order on the grounds of a common law deliberative privilege is **GRANTED** in part. The qualified privilege is available in Vermont and before the Environmental Division.

The Court is aware that the parties have expressed a desire for guidance in working through discovery issues in any depositions. The Court's analysis in this decision is applicable to depositions. The Court suggests that the parties attempt to work through any disputes during depositions, noting objections and assertions of privilege and attempt to conclude each deposition. Any outstanding disputes can be resolved by the Court after the depositions conclude.

Electronically signed April 10, 2026 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division