New England Coalition for Energy Efficiency and the
Environment and The Grand Council of the Crees v. Office of
the Governor, Howard Dean, M.D., Governor, State of Vermont,
and Richard Sedano, Commissioner of Department of Public
Service

[670 A.2d 815]

No. 94-157

Present: Gibson, Dooley, Morse and Johnson, JJ., and Bryan, Supr. J., Specially
Assigned

Opinion Filed November 3, 1995

*James A. Dumont* of *Sessions, Keiner, Dumont & Barnes, P.C.*, Middlebury, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, and *William Griffin*, Chief Assistant Attorney General, Montpelier, for Defendants-Appellees.

**Johnson, J.** This case centers on the Governor's claim of executive privilege in response to plaintiffs' request for documents pursuant to the Access to Public Records Act, 1 V.S.A. §§ 315-320. Although we previously recognized the existence of a common-law, executive privilege doctrine, we acknowledged that some questions remained regarding the scope and operation of the privilege. *Killington, Ltd. v. Lash*, 153 Vt. 628, 648, 572 A.2d 1368, 1380 (1990). We affirm, upholding the executive privilege claim. In so doing, we explain more fully the extent of the protection provided by the privilege, and flesh out the workings of the claim in the context of the Access to Public Records Act.

In November 1991, plaintiffs served access-to-records requests on the Office of the Governor and the Public Service Commissioner. The requests sought all documents and records regarding a contract between several Vermont utilities and Hydro-Quebec. Two days prior

to the requests, the Department of Public Service (DPS) had published a "Review" of the Hydro-Quebec contract, which reaffirmed the Department's support for the venture. At the time of the requests, plaintiffs were engaged in litigation with the utilities and the State, which supported the contract.

Although DPS produced a number of documents in response to plaintiffs' requests, the Governor refused to produce certain documents that he asserted were protected from disclosure by the doctrine of executive privilege. The documents withheld are: (1) a memorandum from James Volz, Director for Public Advocacy for DPS, to then-Governor Snelling, dated August 6, 1991; (2) a memorandum from DPS Commissioner Sedano to Governor Dean, dated November 5, 1991; and (3) a memorandum from Sedano and Volz to Governor Dean, dated November 13, 1991.

Following the procedure prescribed in 1 V.S.A. § 319(a), plaintiffs appealed the denial of the access-to-records request in superior court. Both plaintiffs and defendants moved for summary judgment. The court denied plaintiffs' motion for summary judgment but granted defendants' motion, holding that plaintiffs had not made a showing of need sufficient to rebut the claim of executive privilege. This appeal followed.[1]

## I.

Plaintiffs argue that the trial court erred in requiring a showing of need to overcome the claim of executive privilege. Plaintiffs rely on the Access to Public Records Act, 1 V.S.A. §§ 315-320. Under the statute, an agency that withholds records under any of the listed exemptions has the burden to justify its action. 1 V.S.A. § 319(a).

Defendants claim that the withheld documents are protected by the common-law doctrine of executive privilege, recognized by this Court in *Killington*, 153 Vt. at 636-37, 572 A.2d at 1374. The Access to Public Records Act explicitly incorporates common-law privileges. 1 V.S.A. § 317(b)(4). A claim of executive privilege shifts the burden to the requester to make a showing of need to overcome the presumptive privilege. *Killington*, 153 Vt. at 639, 572 A.2d at 1375. If the court determines that the requester has shown need, the court will conduct an in camera inspection of the documents, to determine if the interest in confidentiality outweighs the need for disclosure. *Id.*

---

[1] Because we affirm the decision below, we do not address defendants' claims of attorney-client and work-product privilege.

The showing of need required to overcome the privilege may appear inconsistent with the burden placed on the agency by the Access to Public Records Act. We recognized this conflict in *Killington*, however, where we emphasized that the common-law privileges incorporated into the statute must "be applied as a whole and not piecemeal." *Id.* Reversing the burden, so that necessity is presumed and the party claiming the privilege must overcome that presumption, would "markedly alter[]" the executive privilege doctrine. *Id.* Recognizing that the showing of need "is an essential part of the privilege itself," we held in *Killington* that "when a claim of executive privilege is asserted, the requester has the burden of providing reasons why the need for the information outweighs the interest in confidentiality." *Id.*

## A.

Plaintiffs nonetheless maintain that no showing of need is required in this case. Plaintiffs first contend that the withheld documents are "postdecisional" and therefore not protected from disclosure by executive privilege. The cases that plaintiffs cite to support this proposition, however, were brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the federal analogue to Vermont's Access to Public Records Act. See *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Paisley v. CIA*, 712 F.2d 686, 688 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201, 204 (D.C. Cir. 1984) (per curiam); *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 668 (D.C. Cir. 1981); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 857 (D.C. Cir. 1980); *Jordan v. Department of Justice*, 591 F.2d 753, 755 (D.C. Cir. 1978). In the FOIA context, federal courts have emphasized a distinction between predecisional documents and communications that are part of the deliberative process and are protected from disclosure under FOIA, and postdecisional documents and communications, which are not protected. *Sears, Roebuck*, 421 U.S. at 151.

This distinction arises out of the privilege established by Exemption 5 of FOIA. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Materials protected under this exemption fall under what is known as the "deliberative process privilege," sometimes also referred to as "executive privilege." *Taxation With Representation*, 646 F.2d at 676-77.

Predecisional documents are generally viewed as part of the "agency 'give-and-take' leading up to a decision," while postdecisional documents frequently "represent the agency's position on an issue, or explain such a position, and thus may constitute the 'working law' of an agency." *Id.* at 677. While the quality of agency decisions is maintained by protecting "the ingredients of the decisionmaking process" from disclosure, communications that follow the decision, explaining or implementing it, do not raise the same concerns for candor and frank discussion. *Sears, Roebuck*, 421 U.S. at 151. Moreover, the public has a greater interest in learning the actual decision of the agency, and the reasons for it, than in discovering the policies and arguments that were rejected. *Id.* at 152.

Plaintiffs are asking this Court to apply the predecisional/ postdecisional distinction developed in the FOIA context to a claim of executive privilege by the Governor. In so doing, however, plaintiffs confuse the common-law executive privilege, which is claimed here, with the deliberative-process privilege established by Exemption 5 of FOIA. The common-law executive privilege, which applies to communications with the Governor, does not arise out of FOIA or the Access to Public Records Act, and is not necessarily coextensive with the deliberative-process privilege.

Rather, the differences between agency decision-making and the decision-making of a chief executive suggest that the predecision/ postdecision distinction should not apply to claims of common-law executive privilege. Agencies are expected to follow statutorily mandated procedures; access to agency records under FOIA and analogous statutes allows the public to examine the agency's compliance with such procedures. Access to records prevents secret rule-making; although the deliberative process is protected until a decision is reached, postdecisional documents that reveal or explain that decision must be disclosed to the public. The regularized procedures of agency decision-making also permit the drawing of a line between predecisional deliberative process and postdecisional explanations of policy.

The decision-making process of the chief executive is not prescribed by statute, nor does it consist of regularized procedures. The public does not have the same interest in examining the internal workings of the process. Moreover, because the chief executive has a range of consultative and decisional responsibilities not easily sepa-

rated into discrete decisions, predecision and postdecision line-drawing would be an arbitrary exercise.

The facts of this case illustrate this point. Plaintiffs argue that the withheld documents are "postdecisional" because Governor Dean had previously stated publicly that he had no role to play with respect to the Hydro-Quebec contract. Yet, despite these public statements, Governor Dean continued to be advised on Hydro-Quebec. Such inconsistencies between public statements and the internal decision-making process make it difficult, if not impossible, for a court to determine at what point a decision is final.

■ Similarly, we are not persuaded by plaintiffs' argument that these documents are not privileged because they do "not relate to any particular decision the Governor was to make." A chief executive properly receives advice on important issues facing the state, even though no immediate decision may be required. The need for honest and open communication between the chief executive and advisors remains.

### B.

■ Plaintiffs make two additional arguments based on law developed under FOIA Exemption 5 to support their claim that the withheld documents are not privileged. First, they assert that because a final decision has already been made on the Hydro-Quebec contract, only documents that represent "losing advice" may be withheld. We have already discussed our unwillingness to limit the common-law executive privilege to predecisional communications relating to specific decisions. Separating winning and losing advice raises the same problem: the decision-making and consultative responsibilities of the chief executive do not lend themselves to such neat distinctions.[2]

Second, plaintiffs maintain that the privilege does not protect from disclosure any factual material that is severable from the rest of the document. Plaintiffs rely upon a statement contained in defendants'

---

[2] Moreover, we are not convinced that plaintiffs have properly characterized this distinction. The case cited for the proposition, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), has a much narrower holding. The Supreme Court in that case held that where "an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion," such a memorandum is no longer protected from disclosure by Exemption 5. *Id.* at 161. Not all winning advice must be disclosed, but only that which is expressly incorporated into a final decision.

answers to plaintiffs' requests to admit. Asked to admit that each document "contains statements which an objective reader would consider to be factual in nature," defendants denied the statement, but qualified the denial, stating:

> All three documents provided the Governor with legal and policy advice on matters at issue in the Hydro Quebec litigation. It is admitted that the documents discussed factual as well as legal and policy considerations, but the documents were advisory.

This statement, and the affidavit of James Volz, which also describes the withheld documents as providing legal and policy advice, make clear that the withheld documents are primarily advisory.

■■ Plaintiffs place great weight on defendants' admission that some factual considerations are discussed in the documents. We fail to see the significance of this statement. Any policy or advisory memorandum will contain some factual references. Indeed, the choice of certain facts to support a policy recommendation is an element of the privileged communication. The inclusion of some facts in an advisory memorandum does not require disclosure of those facts. As the Maryland Court of Appeals has stated, "Opinions, advice and recommendations are premised upon or flow from facts. The mere recitation of certain factual understandings or factual conclusions in a document, forming the basis for the opinions and recommendations, would not deprive a document of its essentially deliberative character." *Hamilton v. Verdow*, 414 A.2d 914, 927 (Md. 1980). But see *Playboy Enters., Inc. v. Department of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (holding that report that reflects choice, weighing and analysis of facts is not protected by deliberative process privilege).

Moreover, plaintiffs do not argue that these documents contain facts that are otherwise unavailable to them. Instead, plaintiffs speculate that the documents contain summaries of data which they have already received from the Department of Public Service. Plaintiffs' claim that they need the "potent weapon" represented by factual material contained in these documents appears unfounded.

## C.

■ Our holding today is not an absolute statement that all direct communications with the Governor are privileged. As we acknowledged in *Killington*, executive privilege protects "'the sensitive

decisional and consultative responsibilities of the Governor.'" 153 Vt. at 636, 572 A.2d at 1373 (quoting *Nero v. Hyland*, 386 A.2d 846, 853 (N.J. 1978)). The purpose of the privilege is to permit "'frank expression and discussion'" among decision-makers. *Id.* at 637, 572 A.2d at 1374 (quoting *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324-25 (D.D.C. 1966)). The withheld documents in this case are internal memoranda from a high-ranking subordinate to the Governor that provide policy and legal advice. Such documents fall within the narrowest definition of executive privilege. Some direct communications with the Governor may be outside the scope of the privilege, but we need not reach such questions in this opinion. See, e.g., *Doe v. Alaska Superior Court*, 721 P.2d 617, 625 (Alaska 1986) (unsolicited letters from citizens to governor not protected from disclosure by executive privilege doctrine); *Hamilton v. Verdow*, 414 A.2d at 927-28 (communications to governor that are primarily factual not protected from disclosure by executive privilege doctrine).

## II.

Plaintiffs argue that, even if the withheld documents might be privileged, defendants have not made a sufficient showing to support a claim of executive privilege. We disagree.

The claim of privilege is supported by an affidavit of James Volz, Director of Public Advocacy. In his sworn affidavit, Volz states that he is the author of the memorandum dated August 6, 1991 (at which time he was acting as Commissioner of the Department of Public Service on Hydro-Quebec matters), and that he is the co-author, with Richard Sedano, of the memorandum dated November 13, 1991. Volz describes these two documents as "confidential" and "advisory" memoranda that contain "policy and legal advice" on the Hydro-Quebec litigation. Volz further states that he consulted with Sedano regarding the memorandum dated November 5, 1991, and recently reviewed that document, which contains "policy advice on Hydro-Quebec."

Although in *Killington* we did not address the elements of a prima facie claim of executive privilege, other courts have described the "strict procedural requirements" that such a claim must satisfy. *Doe*, 721 P.2d at 626. The affidavit supporting the claim must be based on "actual personal consideration" by the responsible official. *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953). The executive must specifically identify the documents for which the privilege is claimed, and must explain why the documents are protected by the privilege. *Black v. Sheraton Corp. of America*, 564 F.2d 531, 543 (D.C. Cir. 1977); *Doe*, 721 P.2d at 626.

█ The affidavit is sufficient to make out a prima facie claim of executive privilege. Volz, as a high-ranking official who was intimately involved with the preparation of the memoranda, is a proper person to assert the claim. The affidavit is based on Volz's personal knowledge of the documents, and describes those documents with particularity. Moreover, the affidavit provides a proper basis for a claim of privilege, stating that the documents are confidential and advisory, and contain policy and legal advice.

## III.

█ Plaintiffs argue that the First Amendment to the United States Constitution and Chapter I, Articles 6 and 13 of the Vermont Constitution require disclosure of the documents. This argument is without merit. As we recognized in *Killington*, the doctrine of executive privilege has both "constitutional and common-law roots." *Killington*, 153 Vt. at 636, 572 A.2d at 1374. At both the state and federal level, the privilege is closely linked to the separation of powers. *Id.* at 636, 572 A.2d at 1373; *United States v. Nixon*, 418 U.S. 683, 708 (1974). By promoting the effectiveness of the governing process, the privilege protects the welfare of the public, not the government official. *Killington*, 153 Vt. at 637, 572 A.2d at 1374. To hold that the public has a constitutional "right to know" that requires disclosure of privileged documents would effectively eliminate the privilege, ultimately harming, rather than benefitting, the public.

## IV.

In conclusion, we emphasize that a claim of executive privilege is not absolute, but qualified. When a prima facie claim of privilege is asserted, a presumptive privilege attaches, but a showing of necessity can overcome the privilege. *Id.* at 639, 572 A.2d at 1375. In this case, plaintiffs do not contest the trial court's holding that no showing of necessity was made, so the claim of executive privilege must be upheld.

*Affirmed.*