2012 VT 33

## Russell Rueger, Mary Ann Rueger and John Moyers v. Natural Resources Board and the District #9 Environmental Commission of the State of Vermont

[49 A.3d 112]

No. 11-106

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Kupersmith, Supr. J., Specially Assigned

Opinion Filed April 27, 2012

430

*James A. Dumont*, Bristol, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Megan J. Shafritz*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

¶ 1. **Reiber, C.J.** Plaintiffs appeal from the trial court's summary judgment order in favor of defendants in this Access to Public Records Act case. The court concluded that certain records held by defendants reflected the deliberations of an agency acting in a quasi-judicial role and thus were exempt from disclosure under 1 V.S.A. § 317(c)(24). Plaintiffs argue that the court erred in interpreting § 317(c)(24). We affirm.

¶ 2. The court found the following facts undisputed. Plaintiffs are parties to a contested Act 250 proceeding concerning a proposed gravel pit near their homes in Bristol, Vermont. In February 2010, after many years of litigation before the local zoning board, the District #9 Environmental Commission, and the Environmental Court, the applicant filed an amended application with the District #9 Commission. When plaintiffs sought to review the file in March 2010, they were advised that the matter had been transferred to the District #1 Commission. In a March 30, 2010 letter to prospective parties, the District #9 Chair indicated that on March 11 the District #9 Commission had requested recusal pursuant to Act 250, Rule 18(B), and on March 18 the Chair of the Vermont Natural Resources Board assigned the District #1 Commission to hear the case.

¶ 3. Plaintiffs filed a public records request, seeking all communications and all notes or records of communications that referred to the transfer or that caused the transfer. The two Commissions and the Natural Resources Board produced some documents in response to the request but declined to produce others. Defendants asserted that the withheld documents, which consisted of email communications, were exempt under 1 V.S.A. § 317(c)(24)

because they reflected the deliberations of an agency acting in a quasi-judicial role.[1]

¶ 4. Plaintiffs then sued defendants to compel disclosure under the Access to Public Records Act (PRA). Defendants filed a motion to dismiss, which was later converted into a motion for summary judgment. After conducting an in camera review, the court agreed with defendants that the documents were exempt from disclosure under 1 V.S.A. § 317(c)(24). That exemption protects "records of, or internal materials prepared for, the deliberations of any public agency acting in a judicial or quasi-judicial capacity." *Id.* The court found that § 317(c)(24) was designed to ensure the integrity of the decisionmaking process, ultimately for the benefit of the public. It noted that the United States Supreme Court had long recognized this principle and compared the administrative quasi-judicial setting to the judicial branch setting.

¶ 5. In this case, the documents at issue were emails between commission members and the commission's counsel, all of which concerned the basis for District #9's decision to disqualify itself from hearing the application. The court found that the district commissions plainly acted in a quasi-judicial capacity as they heard evidence and issued rulings in the manner of a court, and their decisions were subject to review by the Environmental Court. Additionally, the emails concerned an internal discussion about disqualification of members of the tribunal, which was a familiar issue for judicial and quasi-judicial decisionmakers. Just as the internal records of a commission's deliberations on the merits of an application were protected from disclosure, the court reasoned, so too were the commission's deliberations on the initial issue of whether its members should hear the case. The court found that the exemption reached deliberations among the members of the "quasi-court" as well as communications with the staff attorneys assigned to guide their work. The court thus granted judgment to defendants. This appeal followed.

¶ 6. On appeal, plaintiffs challenge the court's interpretation of § 317(c)(24). As detailed below, plaintiffs essentially argue that internal discussions about recusal are not the type of quasi-judicial deliberative material that the Legislature intended to exempt

---

[1] Defendants also asserted that the communications were between members of Commission #9 and counsel and were therefore privileged and exempt under 1 V.S.A. § 317(c)(4). The trial court rejected this argument in its summary judgment decision.

under § 317(c)(24). Our review is de novo, and we affirm the trial court's decision. *Vt. Alliance of Nonprofit Orgs. v. City of Burlington*, 2004 VT 57, ¶ 5, 177 Vt. 47, 857 A.2d 305 (stating that statutory interpretation is question of law warranting de novo review); *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000) (summary judgment appropriate when there are no genuine issues of material fact and any party is entitled to judgment as a matter of law).

■ ¶ 7. In construing § 317(c)(24), our principal goal is to effectuate the Legislature's intent. *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). "Where the Legislature's intent can be ascertained from the plain meaning of the statute, we interpret the statute according to the words the Legislature used." *Herald Ass'n v. Dean*, 174 Vt. 350, 354, 816 A.2d 469, 474 (2002). In conducting our analysis, we are mindful that the PRA represents "a strong policy favoring access to public documents and records." *Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 10, 177 Vt. 287, 865 A.2d 350. To this end, we construe exemptions in the PRA "strictly against the custodians of records and resolve any doubts in favor of disclosure." *Id.*

■ ¶ 8. We agree with the trial court that the documents here fall within the plain language of § 317(c)(24). As stated above, that statute exempts from disclosure "records of, or internal materials prepared for, the deliberations of any public agency acting in a judicial or quasi-judicial capacity."[2] There is no dispute that district commissions are public agencies that act in a quasi-judicial capacity. As the trial court explained, the commissions hear evidence and issue rulings in the manner of a court, and their decisions are subject to review by the Environmental Division. See 10 V.S.A. § 6027 (setting forth powers of district commissions); *id.* § 6085 (hearing procedure); *id.* § 6086 (permit criteria); *id.* § 6089 (appeals from district commission made to environmental division). Their work satisfies an ordinary understanding of the term "quasi-judicial." See *Comm. to Save Bishop's House, Inc. v. Med.*

---

[2] We do not consider plaintiffs' argument that the records are not "internal materials prepared for" the deliberations of the Commission because plaintiffs fail to show that they raised the issue below. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). We note, moreover, that the trial court did not rely on this language in the statute in reaching its decision.

*Ctr. Hosp. of Vt., Inc.,* 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979) (in interpreting statute, Court presumes that the Legislature intended the "plain ordinary meaning of the language used"). It is also consistent with the definition of the term "quasi-judicial proceeding" under the Vermont Open Meetings Law. See 1 V.S.A. § 310(5) (defining "quasi-judicial proceeding" for purpose of Vermont Open Meetings Law as "a contested case under the Vermont Administrative Procedure Act" or "a case in which the legal rights of one or more persons who are granted party status are adjudicated, which is conducted in such a way that all parties have opportunity to present evidence and to cross-examine witnesses presented by other parties, which results in a written decision, and the result of which is appealable by a party to a higher authority"). Commissions act in a quasi-judicial capacity when they consider, as a threshold matter, whether they should recuse themselves from hearing a case. Such action is an integral part of the judicial or quasi-judicial process. See, e.g., Vt. Const. ch. II, § 28 (stating that courts must "impartially administer[]" justice); 3 V.S.A. App. § 3-53 (No. 09-11) (2011) (Executive Code of Ethics) (recognizing that "it is essential to the proper operation of government that public officers be independent and impartial" and "that governmental decisions . . . be made fairly and impartially"); see also *In re Union Leader Corp.,* 292 F.2d 381, 384 (1st Cir. 1961) ("From the general standpoint of the interest of justice, the right to be tried before an unbiased judge is . . . basic in our judicial system.") (quotation marks omitted); *In re Antonio,* 612 A.2d 650, 653 (R.I. 1992) ("It is axiomatic that judges are obligated to recuse themselves in the event that they are unable to render fair and impartial decisions in their cases.").

██ ██ ¶ 9. It is equally evident that the documents here are "records . . . of the deliberations" of the District Commission. The word "deliberate" means "a discussion and consideration by a group of persons of the reasons for and against a measure." Webster's Ninth New Collegiate Dictionary 336 (1985). This echoes the definition of the term "deliberations" as used in the Vermont Open Meetings Law. See 1 V.S.A. § 310(1) ("deliberations" for purpose of Vermont Open Meetings Law means "weighing, examining and discussing the reasons for and against an act or decision, but expressly excludes the taking of evidence and the arguments of parties"). Email discussions between the members of the District Commission and an assigned staff attorney as to

whether a case should be transferred fit well within the plain meaning of the word "deliberations." There can be no question, moreover, that the emails are "records" of such deliberations. See 1 V.S.A. § 317(b) (defining "public record" as "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business").

■ ¶ 10. This conclusion serves the purpose of the statute, which, as the trial court found, is designed to protect the integrity of the judicial process. As the United States Supreme Court recognized in *United States v. Morgan*, when an administrative official acts in a quasi-judicial capacity, examination of his or her mental processes "would be destructive of judicial responsibility." 313 U.S. 409, 422 (1941). "Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* (citations omitted); see also *Thomas v. Page*, 837 N.E.2d 483, 488 (Ill. App. Ct. 2005) ("It is well-settled that a judge may not be asked to testify as to his or her mental impressions or processes in reaching a judicial decision."); *State ex rel. Kaufman v. Zakaib*, 535 S.E.2d 727, 735 (W. Va. 2000) (holding that judicial officers may not be compelled to testify regarding their mental processes used in formulating official judgments or the reasons that motivate them in their official acts). This basic principle is recognized not only in § 317(c)(24) but also in the Vermont Open Meetings Law, which specifically excludes from its provisions "the deliberations of any public body in connection with a quasi-judicial proceeding." 1 V.S.A. § 312(e).

■ ¶ 11. The reasons for protecting such deliberations is evident. As the *Page* court explained:

> Confidential communications between judges and between judges and the court's staff certainly originate in a confidence that they will not be disclosed. Judges frequently rely upon the advice of their colleagues and staffs in resolving cases before them and have a need to confer freely and frankly without fear of disclosure. If the rule were otherwise, the advice that judges receive and their exchange of views may not be as open and honest as the public good requires. In order to protect the effectiveness of the judicial decision-making process,

> judges cannot be burdened with a suspicion that their deliberations and communications might be made public at a later date.

837 N.E.2d at 489-90 (citation and quotation marks omitted). This approach protects the public good, rather than the individual judges and their staffs. See *id.* at 490 ("If the confidentiality of these intra-court communications were not protected, judges and their staffs would be subject to the pressures of public opinion and might well refrain from speaking frankly during deliberations."). Similar policy concerns underlie § 317(c)(24) and protect the records at issue here.

¶ 12. None of plaintiffs' arguments persuade us otherwise. Plaintiffs seek to introduce confusion into the plain language of § 317(c)(24), relying on federal case law and a largely inapposite legal doctrine. They assert that § 317(c)(24) incorporates the "deliberative process privilege" as developed under federal law and argue that we must allow the disclosure of an agency's "working law." They classify the documents here as constituting such "working law."

¶ 13. As support for their arguments, plaintiffs rely on federal case law interpreting 5 U.S.C. § 552(b)(5) of the federal Freedom of Information Act (FOIA). That provision excludes from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* Federal courts have interpreted this provision to incorporate civil discovery privileges, including what is sometimes called the "deliberative process" privilege or the "executive privilege." See *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).[3]

¶ 14. Under federal case law, the deliberative process privilege rests "on the policy of protecting the 'decision making processes of government agencies,' and focus[es] on documents 'reflecting

---

[3] We note that the Vermont Legislature has specifically rejected the notion that the general assembly and the executive branch can rely on the common law deliberative process privilege to shield the disclosure of public records. See 1 V.S.A. § 317(c)(4) (exempting from disclosure under the PRA those "records which, if made public pursuant to this subchapter, would cause the custodian to violate any statutory or common law privilege *other than the common law deliberative process privilege as it applies to the general assembly and the executive branch agencies of the state of Vermont*" (emphasis added)).

advisory opinions, recommendations and *deliberations* comprising part of a process by which governmental decisions and policies are formulated.'" *Id.* at 150 (citations omitted and emphasis added). Federal courts have drawn a distinction between predecisional communications, which are protected from disclosure under FOIA, and "communications made after the decision and designed to explain it, which are not." *Id.* at 151-52; see also *New England Coal. for Energy Efficiency & Env't v. Office of the Governor*, 164 Vt. 337, 340-41, 670 A.2d 815, 817-18 (1995) (discussing federal approach under exemption 5 of FOIA, and rejecting plaintiffs' argument that a "predecision/postdecision" distinction should apply in Vermont to claims of common-law executive privilege).

¶ 15. Predecisional documents are generally viewed "as part of the agency 'give-and-take' leading up to a decision, while postdecisional documents frequently represent the agency's position on an issue, or explain such a position, and thus may constitute the 'working law' of an agency." *New England Coal. for Energy Efficiency*, 164 Vt. at 341, 670 A.2d at 817 (quotations omitted). The federal courts reason that "the quality of agency decisions is maintained by protecting the ingredients of the decisionmaking process from disclosure," while "communications that follow the decision, explaining or implementing it, do not raise the same concerns for candor and frank discussion." *Id.* (quotation omitted).

¶ 16. Whatever the value of this approach (which appears minimal in a quasi-judicial or judicial context), our Legislature did not adopt it in enacting § 317(c)(24). Our Legislature has determined that *all* judicial or quasi-judicial "deliberations" are exempt from disclosure. It does not purport to incorporate a "deliberative process privilege" or distinguish between a quasi-judicial agency's "working law" and other material, and we reject plaintiffs' assertion that we should read such a distinction into the statute. In any event, even assuming arguendo that the federal deliberative process doctrine was somehow incorporated into § 317(c)(24), federal case law clearly recognizes that an agency's "pre-decisional communications" are exempt from public view. See *Sears, Roebuck & Co.*, 421 U.S. at 153 (stating that under FOIA, "[e]xemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, *and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining*

*what its law shall be*" (quotation omitted and emphasis added)). To the extent an analogy can be drawn, plaintiffs seek "predecisional" material here.

¶ 17. We find plaintiffs' remaining arguments equally without merit. First, we reject plaintiffs' assertion that, in applying § 317(c)(24), the trial court was obligated to weigh the public interest in disclosure against the defendants' legitimate expectation of privacy. The plain language of the statute does not call for a balancing test, and there are no grounds for reading such test into the statute. See *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) ("It is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective."). Unlike the cases on which plaintiffs rely, the language used in § 317(c)(24) is not "vague and potentially limitless." See, e.g., *Kade v. Smith*, 2006 VT 44, ¶ 8, 180 Vt. 554, 904 A.2d 1080 (mem.) (finding terms of "personal documents" exemption under PRA to be "vague and potentially limitless," and reasoning that because a broad construction of the term would consume the disclosure rule, exemption must be limited to instances where disclosure would constitute an invasion of personal privacy). Rather, the statute reflects the Legislature's intent to categorically exempt all "records of, or internal materials prepared for, the deliberations of any public agency acting in a judicial or quasi-judicial capacity." See *Caledonian-Record Publ'g Co. v. Vt. State Coll.*, 2003 VT 78, ¶ 9, 175 Vt. 438, 833 A.2d 1273 (reaching similar conclusion as to exemption for "student records," explaining that while term was undefined, the language of the exception was broad and unqualified, and nothing in the PRA suggested any content-based restrictions limiting the exception to certain subjects).

¶ 18. Our decision in *Killington, Ltd. v. Lash*, cited by plaintiffs, is equally inapposite. 153 Vt. 628, 638, 572 A.2d 1368, 1374 (1990). In that case, we stated that "[w]hether or not a claim of *executive privilege* will be honored is a question always contingent on a balancing of the interests of confidentiality against those of disclosure." *Id.* at 637-38, 572 A.2d at 1374 (emphasis added). The fact that a balancing may be inherent in implementing the common law executive privilege, see *id.* at 636-37, 572 A.2d at 1374, has no bearing on our interpretation of § 317(c)(24). It is evident from the statute's plain language that, in enacting

§ 317(c)(24), the Legislature evaluated the competing interests and concluded that a blanket exemption on quasi-judicial deliberations was appropriate.

¶ 19. Finally, we find no support for plaintiffs' assertion that defendants waived their right to the PRA exemption because agency officials stated the reasons for their decision to a Bristol resident and to a newspaper reporter. Plaintiffs point to Vermont Rule of Evidence 510 and assert that, assuming arguendo that the emails are shielded by the "deliberative process privilege," such privilege is waived when any "significant part" of the privileged matter has been voluntarily disclosed.[4] They cite an 1833 case as additional support for this proposition.

¶ 20. As discussed above, this case does not involve defendants' invocation of a personally-held evidentiary privilege and both V.R.E. 510 and the case cited by plaintiffs are inapposite. See V.R.E. 510 (2011) (providing that "[a] person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter."); *Wood v. Kinsman*, 5 Vt. 588, 597-98 (1833) (discussing waiver of personal privilege available to party to defeat an arrest). This case involves a specific and plainly stated statutory exemption under the PRA. Plaintiffs cite no compelling support for their assertion that simply because an agency member speaks with a newspaper reporter or other individual the agency thereby opens to scrutiny the mental processes by which its members arrived at a decision. This approach is inconsistent with § 317(c)(24) and the public good that the statutory exemption is designed to promote.

*Affirmed.*

---

[4] We do not address plaintiffs' arguments concerning any alleged waiver of the attorney-client privilege as the trial court did not find, or base its decision, on the existence of an attorney-client privilege.