ROBINSON, J.
¶ 1. At issue in this appeal is whether, under the Vermont Access to Public Records Act (PRA), a government agency must ask state employees to determine whether they possess public records in digital form in their personal accounts when a requester specifically requests communications between specified state employees and third parties, including records that can be found only in the individual state employee's personal account. We conclude that the PRA's definition of "public record" includes digital documents stored in private accounts, but emphasize that it extends only to documents that otherwise meet the definition of public records. On the facts of this case, the agency was required to ask specified state employees to provide public records from their personal accounts in response to plaintiff's public records request. Accordingly, we reverse and remand.
¶ 2. The undisputed facts are as follows. On May 12, 2015, plaintiff Brady Toensing submitted a PRA request to then-Attorney General William Sorrell. Among other things, plaintiff requested responsive records from "January 1, 2012 to present" from eleven employees and officials in the Office of the Attorney General (AGO). In particular, he asked for: "[a]ny and all communications with or documents related to" forty-four individuals and entities and "communications received from or sent to" any email addresses with one of four domain names. Plaintiff's request stated that "[t]hese requests include, but are not limited to, communications received or sent on a private email account ... or private text messaging account." Plaintiff submitted a revised request on December 11, 2015, that requested records from "January 1, 2011 to present" from nine state employees and officials and asked for "[a]ny and all communications with and documents related to" twenty-seven individuals and three domain names. Per an agreement with plaintiff, the AGO retained an outside contractor at plaintiff's expense to conduct a search of the State's Microsoft Exchange Enterprise Vault to identify emails responsive to plaintiff's request.
¶ 3. The contractor the AGO hired to search for records identified 13,629 responsive emails in the state system, which it consolidated into 1129 email chains. The AGO produced records on a rolling basis from February 5, 2016, through April 28, 2016. The AGO's final response, embodied in a letter from Chief Assistant Attorney General William Griffin, identified the responsive documents the AGO had provided, and described the documents it had withheld on the ground that they were not *1003 public records or were public records exempt from disclosure under the PRA.
¶ 4. In May, plaintiff wrote Chief Assistant Attorney General Griffin indicating that during the course of his numerous communications with the AGO, he had emphasized that his request encompassed communications sent to and received from the private accounts of the identified state employees, but that it did not appear that the nine AGO employees had searched for and produced responsive emails and text messages from their personal accounts. He added that, if the AGO was denying his request to the extent it included responsive records and text messages in personal accounts, the AGO should treat his letter as an administrative appeal of that denial.
¶ 5. After plaintiff confirmed that the only ground for appeal he was asserting in connection with the AGO's response to the records request was the AGO's refusal "to produce, or even search for, responsive public records that may be kept on private email or text messaging accounts," Deputy Attorney General Susanne Young denied plaintiff's administrative appeal. The denial rested on three bases. First, that the PRA only addresses records generated or received by a public agency, and does not extend to private accounts or electronic devices that are not accessible to the agency. Second, there is no basis to conclude that the Legislature would have expected state agencies to conduct searches of the private accounts of state officials and employees, given the law's attempt to balance the interest of public accountability against privacy interests. Third, even assuming that an agency may be obligated in some cases to attempt to search a private account, plaintiff did not provide a sufficient justification for his request in this case.
¶ 6. Plaintiff filed an action in the superior court seeking declaratory and injunctive relief in connection with the AGO's denial. Among other things, he sought a declaration that responsive records "that are related in any way to the individual's employment at the state agency" are public records subject to release under the PRA, "regardless of whether those records are stored on a government or private account." He further requested a declaration that the PRA "requires a good-faith search for records" and that the AGO must release the requested records "or segregable portions thereof subject to legitimate exemptions." He sought an injunction compelling the AGO "to produce (or order its employees to produce) all records responsive to plaintiff's [PRA] requests, subject to legitimate withholdings." The AGO conceded in its answer that it had declined to search private e-mail or text messaging accounts in response to plaintiff's public records request.
¶ 7. In August, the AGO filed a motion for summary judgment, arguing that communications stored on private email and text messaging accounts are not public records under the PRA. If the court determined that information stored in private accounts was subject to the PRA, the AGO argued that an individual who requests public records stored in private accounts should have to show, first, that agency business was conducted using private accounts and, second, that a search of those accounts was necessary to review agency action. In his opposition, plaintiff emphasized that on the record in this case, asking employees to search their own accounts for responsive records, and then disclosing those records, with an index of those withheld on account of exemptions, would be sufficient to meet the State's obligation to conduct a good faith "search" in response to his records request.
¶ 8. The trial court granted the AGO's motion in February 2017. The court concluded that the PRA only applies to public *1004 records "of a public agency," and that accordingly "a record must be in the custody or control of the agency to be subject to search or disclosure." The court added that subjecting personal accounts to the PRA would lead to the invasion of the privacy of state employees and officials, and that implementation of such a requirement would raise practical concerns. It acknowledged that allowing state officials and employees to avoid the PRA by communicating through private accounts "is a serious and, frankly, disturbing concern," but determined that it was up to the Legislature to resolve this problem.
¶ 9. On appeal, plaintiff argues that communications related to agency business but stored in private accounts are public records subject to the PRA. He argues that the language of the PRA as well as public policy support this position. He also contends that the PRA places the full burden of proving that a search for responsive records was reasonable on the agency conducting the search, and that placing any burden on the requester to make a threshold showing that public records are stored in private accounts before the agency is required to ask employees if they have public records stored on private accounts would be contrary to the language of the statute and legislative intent.
¶ 10. The AGO has shifted its argument on appeal, and no longer contends that records that otherwise fit the definition of public records are not subject to the public records law when they are stored in private accounts. Instead, the AGO maintains that in this case it was not required to take any steps to identify potentially responsive public records found on private accounts of state employees, and that its process for responding to plaintiff's request was sufficient.
¶ 11. When reviewing a trial court's grant of summary judgment, we "apply the same standard as the trial court." Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 9, 177 Vt. 287, 865 A.2d 350. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).
¶ 12. On this summary judgment record, we conclude that records produced or acquired in the course of agency business are public records under the PRA, regardless of whether they are located in private accounts of state employees or officials or on the state system. We further conclude that in this case, where plaintiff specifically seeks specified communications to or from individual state employees or officials, regardless of whether the records are located on private or state accounts, the AGO's obligation to conduct a reasonable search includes asking those individual employees or officials to provide any public records stored in their private accounts that are responsive to plaintiff's request. We consider each conclusion in turn.
I. The Scope of the PRA
¶ 13. The PRA does not exclude otherwise qualifying records that are located in private accounts of state employees or officials. Our conclusion is based first and foremost on the definition of "public records" in the PRA, the liberal construction to which that statute is subject, and other provisions in the statute that reinforce our understanding. Moreover, the statutory purpose of the PRA supports this interpretation. Persuasive analyses from numerous state and federal courts further buttress our analysis, as do considerations of sound public policy. Although the focus of this appeal is the relationship between the PRA and records located in private accounts of state employees and officials, we note that the definition of public record, *1005 while quite broad, is not so broad as to encompass many of the records sought by plaintiff in this case. For that reason, our holding does not impinge on the reasonable privacy expectations of state employees.
¶ 14. The definition of "public record" in the PRA does not exclude otherwise qualifying records on the basis that they are located in private accounts. When construing a statute, our goal is to effectuate the intent of the Legislature. Wesco, Inc., 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350. We first look to the statute's language because we presume that the Legislature "intended the plain, ordinary meaning of the adopted statutory language." Id. The PRA defines "public records" as "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business." 1 V.S.A. § 317(b). We have previously described this definition as "sweeping." Herald Ass'n v. Dean, 174 Vt. 350, 353, 816 A.2d 469, 473 (2002) (quotation omitted). The "determinative factor" in the question of what constitutes a public record is "whether the document at issue is 'produced or acquired in the course of agency business.' " Id. at 354, 816 A.2d at 473 (quoting 1 V.S.A. § 317(b) ). The PRA does not define "public record" in reference to the location or custodian of the document, but rather to its content and the manner in which it was created. Cf. Trombley v. Bellows Falls Union High Sch. Dist. No. 27, 160 Vt. 101, 108, 624 A.2d 857, 862 (1993) (rejecting argument that documents were exempt from disclosure based on location in confidential disciplinary files because documents must be evaluated "based on their content rather than where they are filed").
¶ 15. This construction is consistent with the Legislature's intent that we construe the PRA liberally in favor of disclosure. See 1 V.S.A. § 315(a) (providing that "the provisions of this subchapter shall be liberally construed"); Rueger v. Nat. Res. Bd., 2012 VT 33, ¶ 7, 191 Vt. 429, 49 A.3d 112 ("In conducting our analysis, we are mindful that the PRA represents a strong policy favoring access to public documents and records." (quotation omitted)). The Legislature expressly mandated that "it is in the public interest to enable any person to review and criticize [government] decisions even though such examination may cause inconvenience or embarrassment," and we construe the statute in light of this purpose. 1 V.S.A. § 315(a).
¶ 16. Our conclusion is further supported by a PRA provision that acknowledges that a state agency may need additional time to search for and collect the requested records "from field facilities or other establishments that are separate from the office processing the request." 1 V.S.A. § 318(a)(5)(A). "Other establishments" is an undefined term, but this provision suggests that in some circumstances a public record may be located outside of the public agency itself. See Bud Crossman Plumbing & Heating v. Comm'r of Taxes, 142 Vt. 179, 185, 455 A.2d 799, 801 (1982) (explaining that statutes should be construed with others as part of one system).
¶ 17. Other state courts have interpreted similar public records laws to extend to records stored in private accounts. Although these decisions involve different statutes with distinct requirements, they rely on considerations that also apply to the Vermont PRA and their reasoning accordingly adds some persuasive validation to our interpretation of Vermont's public records law. For example, the California Supreme *1006 Court in City of San Jose v. Superior Court recently reasoned that agencies themselves "cannot prepare, own, use, or retain any record" because "[o]nly the human beings who serve in agencies can do these things." 214 Cal.Rptr.3d 274,389 P.3d 848, 855 (2017).[1] It concluded that, because an agency "can act only through its individual officers and employees," documents "prepared by a public employee conducting agency business has been 'prepared by' the agency within the meaning of [the PRA] even if the writing is prepared using the employee's personal account." Id. The court rejected the argument that documents in personal accounts are beyond the agency's control and therefore not subject to the PRA. It recognized that documents do not lose their status as public records only because " 'the official who possesses them takes them out the door.' " Id., 214 Cal.Rptr.3d 274, 389 P.3d at 857 (quoting Competitive Enter. Inst. v. Office of Sci. & Tech. Policy, 827 F.3d 145, 149 (D.C. Cir. 2016) ); see also Nissen v. Pierce Cty., 183 Wash.2d 863, 357 P.3d 45, 52-54 (2015) (concluding that records on private cell phones are subject to PRA because agencies "act only through their employee-agents" and therefore "a record that an agency employee prepares, owns, uses, or retains in the scope of employment is necessarily a record prepared, owned, used, or retained by" the agency (quotation omitted)). But see In re Silberstein, 11 A.3d 629, 633 (Pa.Commw.Ct. 2011) (concluding with respect to records in individual township commissioner's personal email account that "unless the [records] were produced with the authority of [the township], as a local agency, or were later ratified, adopted or confirmed by [the township], said requested records cannot be deemed public records within the meaning of [the public records law] as the same are not of the local agency" (quotation omitted)).
¶ 18. Likewise, federal courts applying the federal Freedom of Information Act (FOIA) have concluded that documents in private accounts may be subject to disclosure under FOIA. See Rutland Herald v. Vt. State Police, 2012 VT 24, ¶ 68, 191 Vt. 357, 49 A.3d 91 (Dooley, J., concurring in part and dissenting in part) (considering federal court decisions construing FOIA in interpreting analogous provisions in Vermont PRA). In Competitive Enterprise Institute v. Office of Science & Technology Policy, the D.C. Circuit considered a FOIA request for records relating to public business located in a private email account maintained by the director of the Office of Science and Technology. 827 F.3d 145 (D.C. Cir. 2016). The agency declined to produce the record on the ground that the records were "beyond the reach of FOIA" because they were in an account under the control of a private organization. Id. at 147. The D.C. Circuit rejected this claim, explaining that records do not lose their agency character just because the official who possesses them takes them out the door. Id. at 149. Considering the purpose of FOIA, the court reasoned:
If a department head can deprive the citizens of their right to know what [the] department is up to by the simple expedient of maintaining ... departmental emails on an account in another domain, that purpose is hardly served. It would make as much sense to say that the department head could deprive requestors of hard-copy documents by leaving *1007 them in a file at [the department head's] daughter's house and then claiming that they are under her control.
Id. at 150 ; see also Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency, 12 F.Supp.3d 100, 122 (D.D.C. 2014) (explaining that agency was not required to disclose employees' personal email addresses since FOIA requesters "can simply ask for work-related emails and agency records found in the specific employees' personal accounts" and "need not spell out the email addresses themselves").
¶ 19. In fact, even the federal cases upon which the AGO relies in arguing for a burden-shifting test with respect to an agency's obligation to search for public records stored in private accounts support the conclusion that such records are, in fact, public records. See Hunton & Williams, LLP v. U.S. Envtl. Prot. Agency, 248 F.Supp.3d 220, 237-38 (D.D.C. 2017) (noting that agencies performed searches of personal email accounts of individual employees when specific facts indicated that particular employee had used personal email account for agency business); Wright v. Admin. for Children & Families, No. 15-218, 2016 WL 5922293, at *8 (D.D.C. Oct. 11, 2016) (acknowledging that agency employees' communications on nonagency accounts may constitute "agency records" subject to FOIA). As noted above, the AGO has conceded this point on appeal.
¶ 20. Strong public policy reasons support the conclusion that electronic information stored on private accounts is subject to disclosure under the PRA. The purpose of the PRA is to ensure that citizens can "review and criticize" government actions. 1 V.S.A. § 315(a). That purpose would be defeated if a state employee could shield public records by conducting business on private accounts. See Wesco, Inc., 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350 ("[W]e favor interpretations of statutes that further fair, rational consequences, and we presume that the Legislature does not intend an interpretation that would lead to absurd or irrational consequences." (quotation omitted)). And we are mindful that the PRA gives effect to the philosophical commitment to accountability reflected in Article 6 of the Vermont Constitution. See Rutland Herald, 2012 VT 24, ¶ 39, 191 Vt. 357, 49 A.3d 91 (recognizing that PRA is Legislature's means of executing broad principles articulated in Article 6 of Vermont Constitution); Vt. Const. ch. I, art. 6 ("That all power being originally inherent in and consequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them.").
¶ 21. "If communications sent through personal accounts were categorically excluded from [the state public records law], government officials could hide their most sensitive, and potentially damning, discussions in such accounts." City of San Jose, 214 Cal.Rptr.3d 274, 389 P.3d at 858. Wide access to records created in the course of agency business is crucial to holding government actors accountable for their actions. Exempting private accounts from the PRA would "not only put an increasing amount of information beyond the public's grasp but also encourage government officials to conduct the public's business in private." Id. (quotation omitted); see also Nissen, 357 P.3d at 53 ("If the PRA did not capture records individual employees prepare, own, use, or retain in the course of their jobs, the public would be without information about much of the daily operation of government."). For the above reasons, we conclude that the PRA applies to public records that are stored in private accounts.
*1008 ¶ 22. We emphasize, however, that in order to qualify as a public record, a document must have been "produced or acquired in the course of public agency business." 1 V.S.A. § 317(b). Although this is a broad test, it is far narrower than suggested by plaintiff, and does not reach all records that are responsive to plaintiff's expansive public records request. With reference to nine identified state officials and employees, plaintiff sought "[a]ny and all communications with or documents related to the following individuals." On its face, this request purports to reach many records that are not public, including communications among the identified individuals that were not produced or acquired in the course of agency business. Likewise, throughout his correspondence with the AGO, in his pleadings in this case, and in his brief on appeal, plaintiff appears to seek a judgment that he is entitled to any records "that are related in any way to the individual's employment at the state agency," or that "any records, regardless of where they are stored, which are related in any way to public business or created as a result of the employee's employment are producible." These statements do not reflect the statutory definition of public records, and our decision today should not be construed to expand the reach of the PRA to reach nonpublic records located in private accounts. See Herald Ass'n, 174 Vt. at 357, 816 A.2d at 476 (acknowledging that PRA "applies only to records generated in 'the course of agency business' "); cf. Nissen, 357 P.3d at 54 ("[E]mployees do not generally act within the scope of employment when they text their spouse about working late or discuss their job on social media. Nor do they typically act within the scope of employment by creating or keeping records purely for private use, like a diary. None of these examples would result in a public record ...."). Our holding that records located in private accounts may be public records does not mean that the PRA purports to reach anything other than public records-those "produced or acquired in the course of public agency business"-that are located in private accounts.[2]
¶ 23. We emphasize this limit to the reach of our holding because nothing in the PRA suggests that the Legislature intended to subject nonpublic communications by state employees or officials to public scrutiny, and any such invasions would raise substantial privacy concerns. State policy on internet use puts state employees on notice that employees with state email accounts must not routinely use personal email accounts to conduct state business without approval from the Secretary of Administration, and specifically notifies employees that "a 'public record' is any record produced or acquired in the course of agency business, regardless of whether the record resides in a state-provided system or personal *1009 account." Electronic Communications and Internet Use, Personnel Policy 11.7, http://humanresources.vermont.gov/sites/humanresources/files/ documents/Labor_Relations_Policy_EEO/Policy_Procedure_Manual/Number_11.7_ELECTRO NIC_COMMUNICATIONS_AND_INTERNET_USE.pdf [https://perma.cc/NP9H-UN23] (emphasis added). The policy explains, "Any public record contained in a non-state-provided system (email or otherwise) is subject to Vermont's Access to Public Records Act." Treating a record produced or acquired in the course of agency business as a public record, regardless of where situated, does not impinge on the reasonable privacy expectations of state employees who are on notice that they should not generally be conducting public business through private accounts. But suggesting that nonpublic records in private accounts of state employees are subject to public disclosure-or even disclosure to the State itself-would raise a host of concerns about the contractual and potentially constitutional privacy interests of state employees, would not further the public policy of open government, and would expand the PRA beyond its intended purpose.
II. The AGO's Obligation in Responding to Plaintiff's Request
¶ 24. We conclude on the record of this case, where plaintiff specifically seeks specified communications to or from individual state employees or officials regardless of whether the records are located on private or state accounts, that the AGO's obligation to conduct a reasonable search includes asking those individual employees or officials to provide any public records stored in their private accounts that are responsive to plaintiff's request. In reaching this conclusion, we consider the language of the PRA, practical factors, the burden-shifting framework that the AGO advocates, its application to the record of this case, the conflicting interests at stake, and persuasive authority from other states.
¶ 25. The PRA itself offers few clues as to the specific responsibilities of a state agency in responding to a public records request that may include records located in the personal accounts of state employees or officials. The statute simply provides, "[u]pon request, the custodian of a public record shall promptly produce the record for inspection." 1 V.S.A. § 318(a). It does not describe the process by which the custodian is to gather, review, and disclose the records, although the statute does contemplate that an individual at the agency will assume ultimate responsibility for the gathering of relevant records, identification of exemptions, and disclosure to the requester. See ibr.US_Case_Law.Schema.Case_Body:v1">id. § 318(a)(2) (requiring custodian to certify any exemptions claimed by identifying records withheld and basis for denial); § 318(a)(4) (requiring custodian to certify in writing when requested record does not exist); see also Pease v. Windsor Dev. Review Bd., 2011 VT 103, ¶¶ 17-19, 190 Vt. 639, 35 A.3d 1019 (mem.) (concluding that municipal development review board properly responded to public records request through custodian, rather than through individual responses from each DRB member and noting that "a custodian [is] one 'who ha[s] it within their power to release or communicate public records' " (quoting Mintus v. City of West Palm Beach, 711 So.2d 1359, 1361 (Fla. Dist. Ct. App. 1998) (per curiam))).
¶ 26. As a practical matter, the steps required to reasonably compile requested public records likely vary depending upon the nature of the request. In some cases, centralized electronic searches of agency records in an email system, document management application, or database within *1010 specified parameters may be the primary or even exclusive means of compiling responsive public records. In other circumstances, electronic searching may take place in a decentralized way, with individual employees searching their own state digital accounts. In yet other cases, many of the responsive records will exist only in hard copy, and someone must search through the appropriate file or files. Sometimes the relevant records, whether electronic or hard copy, are likely to be centralized; in others, they may be dispersed among multiple individual systems. And, per the discussion above, in some cases responsive public records may be located outside state accounts or the four walls of the public agency. Because public records requests can take so many forms, it would be impracticable to try to delineate specific steps required to comply with each and every public records request.
¶ 27. To fill this void, the AGO urges this Court to adopt a burden-shifting test applied by some federal courts under FOIA. To prevail on summary judgment with respect to a FOIA dispute, the defending agency must show that it has conducted a search "reasonably calculated to uncover all relevant documents." Morley v. C.I.A., 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quotation omitted). The agency need not search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." Hunton & Williams, 248 F.Supp.3d at 235 (quotation omitted); see also Wright, 2016 WL 5922293, at *8. Once the agency has provided the court a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. Hunton & Williams, 248 F.Supp.3d at 236 (quotation omitted).
¶ 28. As applied to personal email accounts of state employees, the AGO urges us to adopt a presumption that agency records are unlikely to exist on the agency employees' personal accounts. The AGO contends that a requester can satisfy its burden to present "countervailing evidence" as to the adequacy of an agency's search by identifying evidence that a specific private email address has been used for agency business, but that mere speculation that private email accounts were used does not require the agency to perform a search. Id.; see also Wright, 2016 WL 5922293, at *8-9.
¶ 29. We recognize the conflicting interests that inform the AGO's analysis. The PRA aims to uphold the accountability of the public servants to whom Vermonters have entrusted our government. The statute clearly asserts the Legislature's interest in enabling "any person to review and criticize" the decisions of government officers "even though such examination may cause inconvenience or embarrassment." 1 V.S.A. § 315(a). It recognizes that providing for free and open examination of public record promotes values of constitutional significance. Id. (citing Vt. Const. ch. I, art. 6 ). But the Legislature has also recognized that "[a]ll people ... have a right to privacy in their personal and economic pursuits, which ought to be protected unless specific information is needed to review the action of a governmental officer." Id. Any discussion of requiring, or even allowing, a public agency to "search" the private email accounts of its employees would trigger privacy concerns of the highest order.
¶ 30. But we must bear in mind the "search" at issue in this case, which really isn't a "search" at all. Plaintiff has not argued that the AGO should, or even could, compel individual employees to hand over their smartphones or log-in credentials for their personal email accounts in *1011 response to his public records request. He has made the far more modest claim that the AGO should ask the identified employees to turn over any public records responsive to plaintiff's request that are in their personal email or text message accounts.[3] In the context of this case, that request would not intrude at all on the privacy of the nine state officials or employees involved. The AGO would not have incidental access to any nonpublic texts, emails or other documents in the employees' accounts; the only records the employees would be asked to provide to the AGO would be those that are public records responsive to plaintiff's request. And of those, any public records that are subject to exemption from disclosure, in part or as a whole, would be redacted or withheld by the AGO and included in its itemized list of exempt or partially exempt documents. The notion that state employees have a privacy interest in records that are by law public records-those produced or acquired in the course of agency business-is incongruous.
¶ 31. Courts in at least two other states have adopted an approach similar to that advocated by plaintiff. In Nissen, the Washington Supreme Court considered a request pursuant to that state's public records law for disclosure of text messages sent or received by a prosecutor in his official capacity. 357 P.3d at 49-50. The court first concluded that Washington's public records law reached records "prepared, owned, used, or retain[ed]" by state employees in the course of their jobs, including the work product of public employees found on their personal cell phones such as text messages. Id. at 52-53, 55-56. Considering the mechanics of searching for and obtaining public records stored by or in the control of an employee, the court recognized the competing interests discussed above. The court noted that an individual has no constitutional privacy interest in a public record, but recognized that a state employee may have strong constitutional rights in information that is comingled with those public records. Id. at 56 (describing wealth of personal information accessible through modern mobile devices). On the other hand, the court concluded that the statutory mandate providing for "full access to information concerning the conduct of government on every level" required that the public have some way to obtain public records created and exchanged on personal cell phones. Id. (quotation omitted). The court rejected the notion that the public records law created a "zero-sum choice between personal liberty and government accountability," and held that "an employee's good-faith search for public records on his or her personal device can satisfy an agency's obligation under [the public records act]." Id. at 56-57.
¶ 32. With respect to judicial review of an agency's response to a public records request, the court concluded that "[t]o satisfy the agency's burden to show it conducted an adequate search for records," it would permit employees to submit an affidavit with facts sufficient to show that the information withheld was not a public record. Id. at 57. As long as the affidavits "give the requester and the trial court a sufficient factual basis to determine that withheld material is indeed nonresponsive, the agency has performed an adequate search" under the public records law. Id. When done in good faith, this procedure, *1012 the court opined, "allows an agency to fulfill its responsibility to search for and disclose public records without unnecessarily treading on the constitutional rights of its employees." Id.
¶ 33. More recently, the California Supreme Court relied in part on Nissen when adopting its own method for searching private accounts. City of San Jose, 214 Cal.Rptr.3d 274, 389 P.3d at 860-61. The court concluded that documents that otherwise meet the California public records act's definition of "public records" do not lose this status because they are located in an employee's personal account and provided guidance for conducting searches in light of the need to balance privacy and disclosure interests. Id., 214 Cal.Rptr.3d 274, 389 P.3d at 857, 860. The court acknowledged that California's public records act did not explain how agencies were to search private accounts, but noted that "[s]ome general principles have emerged." Id., 214 Cal.Rptr.3d 274, 389 P.3d at 860. It explained that "[a]s to requests seeking public records held in employees' nongovernmental accounts, an agency's first step should be to communicate the request to the employees in question" and the agency "may then reasonably rely on these employees to search their own personal files, accounts, and devices for responsive materials." Id. (emphasis in original). The court noted that federal courts applying FOIA had approved of this method, as long as the employees have been properly trained in segregating personal and public records, and followed the Washington Supreme Court and federal courts in concluding that as long as the employee provides an affidavit describing the employee's manner of searching in sufficient detail to show that the employee is not withholding public records, the agency's search is adequate. Id., 214 Cal.Rptr.3d 274, 389 P.3d at 860-61.
¶ 34. We find the reasoning of the California and Washington Supreme Courts persuasive. We conclude that the critical question in this case is whether the AGO conducted a search that was reasonably calculated to uncover all relevant public records. We need not decide whether to formally adopt the burden-shifting advocated by the AGO because we conclude that even with a burden-shifting framework, the AGO's search for responsive public records must be adequate in the first instance. We decline to adopt a legal presumption that, in the absence of specific evidence provided by the requester, no state business has been conducted through private accounts. Instead, we conclude that in this case the AGO's search will be adequate if the specified officials and employees are trained to properly distinguish public and nonpublic records, the agency asks them to in good faith provide any responsive public records from their personal accounts, and they respond in a manner that provides reasonable assurance of an adequate search. This might be as simple as an affirmation that the employee, without exception, has not produced or acquired any records in personal accounts in the course of agency business, or that the employee has identified all potentially responsive records through a specified word search, and has segregated and disclosed all records produced or acquired in the course of agency business as opposed to communications of an exclusively personal nature.
¶ 35. We note that plaintiff has advocated a framework that requires an agency to provide a sworn affidavit from each employee who conducts a search of personal accounts for public records in connection with a public records request. We do not adopt this requirement in cases like this in which there is no evidence that an employee has public records in personal accounts. In response to a public records request, a public agency must undertake a reasonable search to identify and disclose responsive, *1013 nonexempt public records. In the absence of any evidence suggesting that an employee is conducting agency business through personal accounts, an agency may reasonably rely on the representations of its employees.[4] In fact, agencies likely rely on their employees' representations routinely in the context of searches of agency records. That is, an agency's search of its own records may take the form of individual employees or officials searching their paper or digital files in their agency account or office, providing responsive records to the custodian of records, and representing that their search is complete. In cases in which governing policies prohibit the conduct of public business on personal accounts and there is no evidence that employees or officials have used their personal accounts to conduct public business, we decline to impose a higher burden on them when searching their personal files than applies to their search of records accessed through agency accounts or hard copies located in agency files.[5]
¶ 36. Accordingly, if, in addition to searching the AGO's own records as it has done, the AGO has policies in place to minimize the use of personal accounts to conduct agency business, provides the specified employees and officials adequate guidance or training as to the distinction between public and nonpublic records, asks them to provide to the AGO any responsive public records in their custody or control, receives a response and brief explanation of their manner of searching and segregating public and nonpublic records, and discloses any nonexempt public records provided, its search will be adequate. This approach strikes a balance between protecting the privacy of state workers and ensuring the disclosure of those public records necessary to hold agencies accountable.
¶ 37. In light of the above analysis, we direct the AGO to complete an adequate search in response to plaintiff's records requests consistent with our analysis, and remand this case to the trial court for completion of the AGO's response as well as consideration of attorney's fees.
Reversed and remanded for further proceedings.

The California Supreme Court issued this opinion during the pendency of this appeal. The trial court here relied on the intermediate court of appeal decision, City of San Jose v. Superior Court, 169 Cal.Rptr.3d 840 (Ct.App.2014), to support its conclusion that documents stored in private accounts could not be subject to the PRA. The California Supreme Court reversed that opinion on appeal.

In his complaint in this case, and in his brief on appeal, plaintiff highlights a particular email between former Attorney General Sorrell and a registered lobbyist that plaintiff obtained through other channels. He apparently highlights this email in support of a request he made after the December 2015 revised records request for additional emails between Attorney General Sorrell and the individual. In ruling on plaintiff's appeal with respect to the applicability of the PRA to emails found in private accounts, the AGO determined that the private email exchange about a public event after the fact did not constitute agency business. The AGO's analysis did not turn solely on the fact that the email was located in a private account. Although plaintiff references this email exchange in his complaint and brief, we understand him to be doing so as a means of illustrating what he believes to be the perils of categorically excluding emails in private accounts from the definition of public records. We do not understand him to have challenged the AGO's determination that by its nature this email is not a public record.

As noted above, plaintiff has actually made a somewhat broader claim about what the AGO should ask of its employees. See supra, ¶ 22. The important point for the purpose of the discussion here is that plaintiff has not argued that the AGO should physically search its employees' private accounts but, rather, that the AGO should ask employees to search their own accounts.

Whether an agency may in its own discretion require its employees to sign an affidavit is not before us. We decide only that under these circumstances the PRA does not require affidavits.

We recognize that the cases we have relied upon do impose such a requirement. However, the Washington Supreme Court called for an affidavit in part because its public records statute expressly contemplates judicial review of agency actions taken pursuant to the public records law based solely on affidavits. See Nissen, 357 P.3d at 57 ; Wash. Rev. Code Ann. 42.56.550(3) (2017). Moreover, in that case the fact that the prosecutor was conducting official business using his personal cell phone to send and receive text messages was established. We do not address here the burden on an agency to establish an adequate search with respect to public records in the personal accounts of agency employees or officials in cases in which there is evidence of employees or officials conducting public business through personal accounts.